364 So.2d 971 (1978)
STATE of Louisiana
v.
Dale BOUFFANIE.
Nos. 61477, 61478.
Supreme Court of Louisiana.
November 13, 1978.
Rehearing Denied December 14, 1978.
*972 Leslie J. Clement, Jr., Wilbert J. Tauzin, II, Thibodaux, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Francis Dugas, Dist. Atty., John J. Erny, Jr., Asst. Dist. Atty., for plaintiff-appellee.
DENNIS, Justice.
Defendant, Dale Bouffanie, was originally charged by bills of indictment with two offenses of first degree murder and two offenses of armed robbery. The district court, after a hearing, denied defendant's motions to suppress physical evidence and a confession. The bills of indictment were amended to accuse defendant of two offenses of second degree murder. Defendant pleaded guilty to these offenses reserving his right to appellate review of the trial judge's rulings on the motions to suppress. The trial judge sentenced defendant to two consecutive sentences of life imprisonment at hard labor. Defendant appealed, relying on sixteen assignments of error, two of which were not briefed or argued.
A tortuous factual pattern surrounds the contested seizures of evidence and the confession. A warrant for the arrest of defendant Bouffanie for criminal neglect of family was issued on January 17, 1977. Police officers made several trips to the defendant's residence to arrest him but were told on each occasion that Bouffanie was not there. On the morning of February 7, 1977, the bodies of Boone Terrebonne and Rowena Theriot were discovered near Milo's Lounge in Galliano. The police renewed their efforts to locate the defendant when it developed that he possibly had committed the two homicides and a burglary. In the late afternoon of February 7, 1977, police officers began surveillance of the house in which the defendant resided with Mrs. Mona Bouzigard Guidry. Upon seeing Bouffanie enter the house with Mrs. Guidry and her brother, Ronald Bouzigard, the officers approached the house with the intention of arresting him for criminal neglect of family. After answering their knock, Mrs. Guidry denied that defendant was present and consented to a search of the premises. The grounds as well as the inside of the house were inspected. The defendant was not found but a duffel bag containing rifles and a back-pack filled with pistols were found beneath the house near the back steps.
Mona Guidry and Ronald Bouzigard were taken to the Galliano jail for questioning and advised of their rights. Guidry gave an inculpatory statement which implicated the defendant in a local burglary involving the rifles and pistols found at the house. She was arrested, charged as an accessory after *973 the fact to simple burglary and put in jail. Bouzigard gave no statement and was allowed to leave.
Early the next morning, on February 8, 1977, police officers found defendant sleeping in a car outside the house where he was last seen and arrested him for criminal neglect of family. Defendant complained of pain, and was taken to the Galliano hospital where he received treatment in the emergency room from Dr. Barry Simon. According to the doctor, the defendant was incapable of rational conversation and unable to give a patient history. One of the officers told the doctor that Bouffanie was suffering from heroin withdrawal, and the defendant told the doctor that he had been stabbed in New Orleans. The doctor incorporated this information in his written diagnosis. Doctor Simon administered a sedative and prescribed additional librium capsules to be given to the defendant, if needed, every four hours. After the medical treatment was completed at about 4:00 a. m., Bouffanie was taken to the jail.
Later the same day the police, after receiving information that Mona Bouzigard Guidry and Ronald Bouzigard were involved in the homicides and robberies under investigation, interrogated them and obtained a statement from each implicating Bouffanie, Guidry and Bouzigard in the murders and armed robberies of Boone Terrebonne and Rowena Theriot. Guidry and Bouzigard both stated that, after dropping Bouffanie at the place where he planned to rob Terrebonne, they later picked him up and drove him to his residence where a bullet was removed from his body, melted in a spoon and thrown in a trash can. Based on these statements, search warrants were issued authorizing the inspection of the defendant's person and the house. In executing the warrant to search the house the officers found and seized as evidence against Bouffanie the melted bullet, spoon and some bloody clothing.
At approximately 11:00 p. m. on February 8, 1977, Doctor Robicheaux, the parish coroner, examined Bouffanie's chest pursuant to the search warrant and found a bullet wound and another kind of wound. Defendant's blood alcohol and drug screen tests were negative. After talking to the defendant for approximately twenty-five minutes, Doctor Robicheaux turned him over to the police and advised the officers that he would prescribe a sedative if defendant later complained of nervousness. However, the doctor did not recall that the defendant was in pain at that time.
Immediately upon being returned to the jail at 11:57 p. m., Bouffanie signed a waiver of rights form and gave a statement confessing to the murders and armed robberies of Terrebonne and Theriot. After the interrogation, which lasted about one hour, defendant was transported to the jail in Thibodaux. As they passed a hospital on the way defendant requested some medication. He was taken into the emergency room where he received some medicine. The record reflects that defendant was administered a mild sedative but does not indicate whether he received any additional treatment. Apparently, Bouffanie was then taken to the Thibodaux jail after only a brief stop.
ASSIGNMENT OF ERROR NO. 1
In his first assignment of error defendant contends that the district court should have suppressed his confession because it was coerced by police officers who withheld medical assistance from him during his acute heroin withdrawal until he gave them the statement.
Before a confession or inculpatory statement can be introduced in evidence the State must prove affirmatively and beyond a reasonable doubt that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La.R.S. 15:451; La.C.Cr.P. art. 703(C); State v. Glover, 343 So.2d 118 (La.1977). In reviewing the trial judge's ruling as to the admissibility of a confession, his conclusions on credibility are entitled to the respect due those made by one who saw the witnesses and heard them testify. State v. Bias, 352 So.2d 1011 (La.1977); State v. Cobbs, 350 So.2d *974 168 (La.1977); State v. Adams, 347 So.2d 195 (La.1977). However, because of the State's burden, it is required to rebut specific testimony introduced on behalf of defendant concerning factual circumstances which indicate coercive measures or intimidation. State v. Simmons, 328 So.2d 149 (La.1976).
Despite conflicts in the testimony, our review of the record reflects that the evidence supports the trial judge's finding that the State sustained its burden on the issue of voluntariness. Although one officer testified that Bouffanie complained of pain the night his confession was given, all of the other officers testified that he appeared nervous but coherent and did not request medication. All of the officers testified that no inducements, promises or threats were made or offered to defendant before he signed the confession. Bouffanie testified that his confession resulted from his confusion, his need of medical attention, and his psychological intimidation by the police officers' questions about his wound. However, the police officers' testimony rebutted these contentions, and Bouffanie himself admitted that he signed a waiver of rights form and was fully aware of the meaning of his confession.
Doctor Simon and two other medical experts called by the defendant testified that it was possible that Bouffanie was experiencing drug withdrawal at the time of his confession, and, if so, it was possible that he may have been induced by his condition to give a confession that he otherwise would not have made. However, each witness indicated that because of the many variables he could not state that either proposition was more probable than not.
The testimony of the doctor who examined defendant immediately prior to the taking of the confession provided even less basis for finding that the statement was involuntary. Doctor Robicheaux did not recall that the defendant told him that he was in pain. He administered no medicine to the defendant at that time, although he had treated the defendant before and was aware of his drug problem. Doctor Robicheaux's medical examination of the defendant related primarily to the execution of the body search warrant, but the doctor testified that the defendant, although frail, was physically sound and in possession of his mental faculties.
On the record presented for our review we cannot say that the trial judge erred in finding that the State had borne its burden of proving beyond a reasonable doubt that defendant confessed voluntarily.
This assignment lacks merit.
ASSIGNMENTS OF ERROR NOS. 3, 10, 11, 13
In these assignments defendant contends that the initial search and the seizure of the guns at his residence were unconstitutional. Consequently, he argues, all fruits of those unlawful acts should have been suppressed, including the guns, the confessions of Guidry and Bouzigard, and the evidence obtained with the two search warrants.
As the officers were looking for Bouffanie at the house, a detective observed what he thought was a person hiding underneath the house near the back steps. He ordered the person to come out and received no answer. Upon pulling the object from under the house he discovered that it was a cloth backpack containing pistols. A second object resembling a person was likewise withdrawn and found to be a duffel bag containing rifles. The guns were recognized by one of the officers as being of the same type that were taken in the recent burglary under investigation. Positive identifications of them as the stolen weapons were made at the police station when the serial numbers were checked.
The Fourth Amendment and the Louisiana Constitution of 1974, Article 1, § 5 prohibit unreasonable searches and seizures. Absent one of the narrow exceptions to the requirement of a search warrant, warrantless searches and seizures are unreasonable. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); State v. Fearn, 345 So.2d 468 (La.1977). In order *975 for evidence obtained without a search warrant to be admissible, the State bears the burden of proof in showing that the search and seizure were justified under one of the narrow exceptions. State v. Franklin, 353 So.2d 1315 (La.1977).
The State contends that the weapons were seized while in plain view during the consensual search of the premises for Bouffanie. In order for the plain view doctrine to apply: (1) there must be a prior justification for an intrusion into a protected area; (2) in the course of which evidence is inadvertently discovered; (3) and it must be immediately apparent without close inspection that the items are evidence or contraband. State v. Fearn, supra. The uncontradicted testimony of the police officers indicates that Mona Guidry gave them permission to search the premises for Bouffanie. Since Mrs. Guidry was a resident of the house her consent to search for Bouffanie authorized the officers to look anywhere on the premises that he could have been hiding to avoid arrest. The acts of the officers in pulling the objects which appeared to be persons from under the house after receiving no response to a command did not exceed the reasonable scope of Mrs. Guidry's consent to search. Defendant argues that it was not immediately apparent without close inspection by the officers that the bags filled with guns were evidence or contraband. However, an officer testified that the first bag seized was open, exposing to view a large number of firearms, which the officers were aware was the kind of property taken in the burglary under investigation.
Although the record is not free of doubt as to whether it was immediately apparent without close inspection that the guns were evidence, the testimony reasonably supports findings on this and other factual issues which justify approval of the police conduct as a plain view seizure.
These assignments are without merit.
ASSIGNMENTS OF ERROR NOS. 2, 9, 12, 14, 15
In these assignments defendant argues that the fruits of the second search of the house, i. e., the bullet, spoon and clothing, should have been suppressed because the search was conducted pursuant to a search warrant which was illegal due to its having been obtained on the strength of the involuntary confessions of Mona Guidry and Ronald Bouzigard.[1]
In his motion to suppress the defendant alleges that the confessions were obtained by the authorities under the influence of fear, duress, intimidation, threats, inducements, and promises and without the accuseds' having been advised of their rights.
We put to one side the question of whether Bouffanie lacks standing under the Louisiana Constitution to suppress the fruits of confessions unlawfully obtained from his codefendants. Under the federal constitution it is possible that only the person whose Fifth Amendment right has been violated can claim the protection of that privilege. See, Alderman v. United States, 394 U.S. 165, 89 S. Ct. 961, 983, 22 L.Ed.2d 176 (1969) (Fortas, J., concurring). Accord: State v. Mitchell, 278 So.2d 48 (La.1973). But see, Massachusetts v. White, 371 N.E.2d 377 (1978), cert. granted, 436 U.S. 925, 98 S.Ct. 2817, 56 L.Ed.2d 767, 1978. On the other hand, the California Supreme Court seems to have taken the position that a defendant has standing to challenge the violation of a third party's rights through physically and psychologically coercive tactics, but that he may not exclude evidence whose only taint results from questioning a suspect without the required Miranda warnings. People v. Varnum, 66 Cal.2d 808, 59 Cal.Rptr. 108, 427 P.2d 772 (1967), cert. denied, 390 U.S. 529, 88 S.Ct. 1208, 20 L.Ed.2d 86 (1968). Under the A.L.I. Model Code of Pre-Arraignment Procedure, § 290.2(6) the *976 defendant may have evidence suppressed if probable cause for the search warrant was based in necessary part on information unlawfully acquired.[2] Arguably, the combined requirements of Louisiana constitutional provisions would produce a similar effect. The express intention of Article I, § 5 of our state constitution is that any defendant against whom evidence acquired through an unreasonable search or seizure is offered, whether or not it was obtained in violation of his rights, has standing to exclude the evidence. State v. Boyd, 359 So.2d 931 (La.1978); State v. Joseph, 351 So.2d 1162 (La.1977); State v. Culotta, 343 So.2d 977 (La.1977); State v. Roach, 338 So.2d 621 (La.1976). Article I, § 5 prohibits unreasonable seizure of the person as well as property, communications, houses, papers and effects. If the detention of a person for questioning without being advised of his rights and the reason for his arrest, as required by Article I, § 13, or the compulsion of him to give evidence against himself in contravention of Article I, §§ 13 and 16, constitutes an unreasonable seizure of his person, anyone adversely affected by the seizure has standing to raise its illegality. It is not necessary to deal with these issues in this opinion, however, because we conclude that the defendant has failed to carry his burden of proving either that the confession was obtained with coercive tactics or without advising the suspects of their rights.
The general rule is that on the trial of a motion to suppress the burden of proof is on the defendant to prove the grounds of his motion. La.C.Cr.P. art. 703(C). One exception to the rule is that the State has the burden of proving beyond a reasonable doubt the voluntariness of a confession which the defendant has moved to suppress as evidence at the trial on the merits. La. C.Cr.P. art. 703(C); La.R.S. 15:451; State v. Glover, supra. This exception does not apply in the instant case, however, because the State did not seek to introduce, nor the defendant to suppress, the confessions of Guidry and Bouzigard for use as evidence at the trial on the merits.
Although the redactors recognized the possibility of other exceptions to the general rule of burden of proof, see, La.C.Cr.P. art. 703, Official Comment (e); see, e. g., State v. Franklin, 353 So.2d 1315 (La.1977) (the State has the burden of proving that a warrantless search is justified under one of the narrow exceptions to the warrant requirement), the defendant has the burden of proof in overcoming the rebuttable presumption of the validity of the affidavit supporting the search warrant. Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). See, State v. Melson, 284 So.2d 873 (La.1973); State v. George, 273 So.2d 34 (La.1973); State v. Anselmo, 260 La. 306, 256 So.2d 98 (1971); A.L.I. Model Code of Pre-Arraignment Procedure § 290.2(6).
The Supreme Court and this Court have both assigned to the defendant the burden of disproving the veracity of the factual statements in the affidavit upon which a search warrant was issued. Franks v. Delaware, supra; State v. Melson, supra; State v. George, supra; State v. Anselmo, supra. The same underlying policies of these decisions, the deterrence of unwarranted police *977 conduct and the preservation of judicial integrity, demand that a defendant be allowed to challenge a search warrant based in necessary part upon an illegally obtained confession, unless he lacks standing as a matter of constitutional law. Accordingly, if the defendant in the instant case has standing, the procedure and burden of proof set forth by the Supreme Court in Franks v. Delaware as governing challenges to the truthfulness of factual statements made in an affidavit supporting a search warrant would appear, in substantial part, to be applicable here:
"* * * [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." ___ U.S. at ___, 98 S.Ct. at 2676-77.
At the motion to suppress hearing no evidence was introduced which tended to show that the confessions were involuntary. The defendant called Guidry and Bouzigard as witnesses, but they refused to testify claiming their privileges against self-incrimination. Since they had also been charged with the murders and robberies of Terrebonne and Theriot, the trial judge found that the privilege had been invoked with justification.
Applying the rules of Franks v. Delaware by analogy to the evidence in the instant case, we conclude that the defendant made a substantial preliminary allegation in his motion to suppress that the police officers had obtained the search warrants based essentially on involuntary confessions; that the confessions were necessary to the finding of probable cause; and that the defendant was afforded a hearing. However, at the hearing the allegation of unwarranted police conduct was not established by the defendant by a preponderance of the evidence. Accordingly, the trial judge correctly denied the motion to suppress.
These assignments of error are without merit.
OTHER ASSIGNMENTS OF ERROR
The remaining assignments of error are without reversible merit. Numbers 5 and 6: The defendant contends that the judge should not have allowed Guidry and Bouzigard, who were charged as co-defendants, to invoke the privilege against self-incrimination. However, the evidence supports the trial judge's rulings that their testimony would have tended to incriminate them. La.R.S. 15:276. Number 7: The objection to defense counsel's hypothetical question was properly sustained because it assumed as true that which had not been proven, La.R.S. 15:278, and defense counsel did not represent that the particular facts assumed on that occasion would be educed during the hearing. Number 16: No harmful or reversible error occurred when a deputy sheriff was allowed to express his opinion that defendant confessed voluntarily because the remark was not made to a jury and the judge indicated that he would not consider it as evidence.
Accordingly, the defendant's convictions and sentences are affirmed.
NOTES
[1] Defendant also contends that the confessions of Guidry and Bouzigard were illegal as fruits of the illegal seizure of the guns at the house. However, we considered and rejected the basis for this argument in reviewing defendant's assignment of error number three, when we concluded that the guns were seized while in plain view during a consensual search of the premises.
[2] However, the A.L.I. commentators acknowledge that this question is not free from difficulty:

"The Supreme Court seems never to have squarely faced the issue. There are implications cutting against the Code provision in Mc-Donald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948), and in the dissenting opinions of Justices White and Harlan in Berger v. New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967). There are lower court cases which support the provision. Hair v. United States, 110 U.S.App.D.C. 153, 289 F.2d 894 (1961); McGinnis v. United States, 227 F.2d 598 (1st Cir. 1955). But other cases say that probable cause may be based on evidence obtained from `mere technical trespasses.' United States v. Buchner, 164 F.Supp. 836 (D.D.C.1958), aff'd, 106 U.S.App.D.C. 16, 268 F.2d 891 (1958), cert. denied, 359 U.S. 908, 79 S.Ct. 584, 3 L.Ed.2d 573 (1959); United States v. Halsey, 257 F.Supp. 1002 (S.D.N.Y.1966); United States v. Conti, 361 F.2d 153 (2d Cir. 1966), vacated on other grounds, 390 U.S. 204, 88 S.Ct. 899, 19 L.Ed.2d 1035 (1968)." A.L.I. Model Code of Pre-Arraignment Procedure, § 290.2, Pt. 2 Commentary.