385 So.2d 776 (1980)
STATE of Louisiana
v.
James NAPIER and Walter B. Gatewood.
No. 65860.
Supreme Court of Louisiana.
June 23, 1980.
*777 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Abbott J. Reeves, William W. Hall, Asst. Dist. Attys., for plaintiff-appellee.
Jack Quarles, Martha E. Sassone, Indigent Defender Board, for defendant-appellant.
*778 DENNIS, Justice.
Defendants James Napier and Walter Gatewood were charged with a crime of simple burglary, La.R.S. 14:62, arising out of an incident at the Whitney Shop in Gretna. The defendants were tried separately. Napier was found guilty as charged and was sentenced to serve five years imprisonment at hard labor. Gatewood was found guilty of attempted simple burglary and received a sentence of imprisonment at hard labor for four years. Both defendants appeal their convictions arguing primarily that confessions given by them should have been suppressed because they were given only as a result of promises allegedly made by the arresting police officers. The defendants' arguments are without merit. The trial judge's ruling that the statements were not improperly induced is supported by the record. We, therefore, affirm the convictions and sentences of both defendants.[1]
On April 17, 1977 the police received a call at about 8:25 p. m. that a burglary was in progress at the Whitney Shop in Gretna. Patrolman Dunn was the first on the scene and when he arrived he spotted Napier outside the business. The officer called out to Napier who responded by turning and walking in the other direction, ultimately walking behind a large trailer on the premises. Officer Dunn followed and placed Napier under arrest, read his Miranda rights, and placed the defendant in the police car. Dunn testified that at that point he went to the building and looked in, spotting another person still inside. He radioed headquarters for additional men and a K-9 unit. Upon arrival the K-9 team entered the building and captured Gatewood, placing him under arrest.
Both Napier and Gatewood gave statements to the police about the burglary. They said they were prisoners at the Forest County Prison Farm located in Mississippi and had been sent to Louisiana by Warden Alford of Forest County Prison to steal tools. Defendants explained that the warden was planning to open a shop near the prison where he would repair stolen cars and sell them. The warden, however, needed tools to effectuate this operation. Therefore, he sent prisoners, Napier and Gatewood, to steal what he needed; a practice which, according to the defendants, was not uncommon. The defendants expressed great fear of Warden Alford, who allegedly told them not to return without his tools.
The defendants argue that the officers promised them that neither Napier nor Gatewood would be sent back to Mississippi or prosecuted in Louisiana on burglary charges if they would give a statement describing the illegal activity allegedly occurring in Mississippi. Both defendants gave statements which were introduced at each defendant's trial despite defendants' arguments that the confessions were not voluntary.
In order for a confession to be introduced into evidence the state has the burden of showing affirmatively and beyond a reasonable doubt that the confession was made freely and voluntarily and that it was not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises. La.R.S. 15:451; La.C.Cr.P. art. 703(C); State v. Manning, 380 So.2d 46 (La.1980); State v. Bouffanie, 364 So.2d 971 (La.1978); State v. Glover, 343 So.2d 118 (La.1977). In reviewing the trial judge's ruling on the admissibility of the confession his findings of fact and determinations of credibility are due great weight. State v. Bouffanie, supra; State v. Bias, 352 So.2d 1011 (La.1977). We find no error in the trial judge's ruling that the statements were admissible in that they were given freely and voluntarily and were not the result of any improper influence on the part of the police. It is not disputed that both Napier and Gatewood were given their rights under Miranda at the time of their arrest and before any statements were given. Later each defendant was presented *779 a police "rights of arrestee" form which enumerated the defendants' rights and each signed the form acknowledging that he understood all of the rights enumerated thereon.[2] They also signed statements saying that their confessions were given freely and voluntarily and not as a result of any inducement or promise.[3] Any question of the validity of the confessions is a result only of the defendants' account of what happened immediately preceding the giving of the statements.
Defendant Gatewood actually gave two statements, one on the date of the burglary, April 17th, and another several days later, April 22nd. Only the April 22nd statement was introduced at trial. Although the first statement was not introduced, the defense argues that its illegality taints the voluntariness of the April 22nd statement. The circumstances surrounding the giving of the first statement must be considered in determining the propriety of admitting the second statement at trial.
The story of Gatewood's arrest is told differently by him and by the policeman making the arrest. Officer O'Quain testified that upon entering the Whitney Shop he gave the command for the K-9 Max to seek out and find the person still in the building. Max searched the building and detected that Gatewood had climbed upon the top of the false ceiling and was hiding there between it and the roof. O'Quain climbed a ladder up to this level. He grabbed Gatewood as the defendant tried to get away. A scuffle ensued during which punches were exchanged. Then the two men stepped off of the lumber cross pieces and onto the unsupported ceiling. This flimsy ceiling material was unable to hold their weight and both men fell through to the floor. When they fell the dog grabbed Gatewood by the leg. As Gatewood tried to get away from the dog it became more vicious and bit the defendant on the arms and legs. Officer O'Quain was somewhat stunned at first from the fall and upon regaining his complete consciousness called the dog off and arrested Gatewood. The defendant had sustained several lacerations and scratches on his arms and legs from the dog and had also sustained a broken nose. He was given first aid treatment by those present and then proceeded to give a statement to police.
Gatewood's story of the arrest is very different. According to his version, when O'Quain climbed the ladder he pointed his gun at Gatewood who immediately surrendered. *780 The officer made Gatewood climb down the ladder first. When he got almost to the floor the dog grabbed his pants leg. Although Gatewood protested, O'Quain would not call the dog off and forced defendant to climb down to the floor. When the policeman reached the floor he hit Gatewood breaking his glasses and his nose. Gatewood's attempt to retreat from the brutality of the officer resulted in his being more severely bitten by the dog. He was finally placed under arrest formally and escorted to the police car.
Gatewood went on to say that he was not given any medical treatment and was told that he didn't have to make a statement but that his cohorts had already made statements and if Gatewood did not he would be returned to the care of the Mississippi authorities. Defendant argues that because of his fear of Warden Alford and his pain from the injuries he had received he gave the statement. Only after this was he taken to the hospital where he received treatment for his wounds.
The state did not seek to introduce Gatewood's statement made at the time of the arrest on April 17th. Rather, a statement given by him on April 22nd was introduced. The defense argues that although the April 22nd statement was taken after Gatewood had been treated for his injuries, it should be held inadmissible because it was tainted by the first allegedly involuntary statement. The first statement was involuntary, according to the defendant, because he was in such pain from his untreated wounds and because Officer Dunn told him that his companions had already made statements about the operation in Mississippi and that if he did not do the same, he would be sent back to Mississippi.
Accepting defendant's argument that the first statement was not given freely and voluntarily, "the proper inquiry is whether the conditions that [would render] the earlier confession inadmissible carried over to invalidate the subsequent one." State v. Welch, 337 So.2d 1114, 1120 (La.1976). See also State v. Young, 344 So.2d 983 (La. 1977). The second statement was given after Gatewood had been treated for his injuries and was no longer in any pain from them. Therefore, the pain he was required to withstand when the first statement was given was not a factor in connection with the second statement.
The other factor argued by Gatewood as being an improper inducement to confess is the threat to send him back to Mississippi if he did not give a statement. Such threats or promises may in fact constitute sufficient inducement to confess to affect the admissibility of the statement. See State v. Jackson and Sneed, 381 So.2d 485 (La.1980). In this case, however, Officer Dunn directly controverted the giving of any such assurances to Gatewood in order to induce him to confess. See State v. Bouffanie, supra, at 974; State v. Simmons, 328 So.2d 149 (La.1976). Therefore, the admissibility of the statement ultimately hinges on the credibility of each witness. The trial judge's determination of credibility is entitled to great weight and should not be overturned unless unsupported by the evidence. State v. Webb, 364 So.2d 984 (La.1978); State v. Matthews, 354 So.2d 552 (La.1978). Our review of the evidence does not show that the trial judge abused his discretion in finding that Gatewood gave the April 22nd statement freely and voluntarily. Any taint occurring as a result of the April 17th statement was attenuated both by time and circumstance so as not to affect the admissibility of the April 22nd statement.
Napier also argues that he gave a confession to police only in response to promises that in return for his statement he would not be returned to Mississippi and would not be prosecuted for this burglary or would receive a sentence only for time already served. Napier's argument falls, however, with the examination of the necessary sequence of events. Primarily, it is to be noted again that confessions may not be admitted at trial if they are the result of promises, threats, or inducements. We cannot find any plausible sequence of events in which defendant's statement regarding the theft of tools and the reasons for the commission *781 of the crime could result from the alleged police promises. To recount, Napier alleges that the police promises were that in return for a confession, the defendant would not be returned to Mississippi and the care of Warden Alford. The police also allegedly promised that no prosecution for burglary would follow, or at the most the sentence would be limited to time served. According to Napier the reasoning of the police was that they did not care about the burglary but wanted to find out about the goings on in Mississippi with Warden Alford. The logical fallacy in the contention that these promises induced the confession is that without defendant having first offered the information about the burglary being ordered by Warden Alford the police would have no knowledge of the circumstances. It is clear, therefore, that Napier must have offered the information about the burglary and the warden not as a result of any promises, but before any such alleged promises could have been made.
Napier's argument that he confessed only as a result of police promises is unfounded. It is obvious that he must have given a statement before police would have had sufficient knowledge to make promises of the nature alleged by Napier. On this basis we cannot say that the statement was induced by police promises or that it was not freely and voluntarily given.
As an additional assignment of error Gatewood also argues that the twelve year maximum possible penalty for simple burglary and the six year maximum possible penalty for attempted simple burglary are excessive and, therefore, unconstitutional. La.R.S. 14:62, 27; United States Const., 8th Amend.; La.Const.1974, Art. 1, § 20. Gatewood received a four year sentence for attempted simple burglary, but argues that because of its unconstitutionality no valid sentence can be imposed under La.R.S. 14:62.
A twelve year sentence for simple burglary is not unconstitutionally excessive under either the cruel or unusual punishment prohibition of the United States Constitution or the specific prohibition against excessive punishment of our Louisiana Constitution. Such a sentence for simple burglary is not so grossly disproportionate to the severity of the crime charged that it shocks our sense of justice. See Coker v. Georgia, 433 U.S. 584, 97 S.Ct. 2681, 53 L.Ed.2d 982 (1977); State v. Beavers, 382 So.2d 943 (La. 1980). The defense has not shown that the legislature stepped outside its broad scope of authority in providing for a possible twelve year prison term. We do not believe that the penalty provision provides for an unconstitutionally excessive sentence considering the severity of the crime of simple burglary, the frequency of its occurrence, and the probability of harm to the victims.
For the above assigned reasons we hold that both the Napier and Gatewood statements were freely and voluntarily given and not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises. They were, therefore, properly admitted into evidence. We also hold that the maximum possible sentence of twelve years imprisonment for simple burglary is not unconstitutionally excessive. Defendants' convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] Assignments of Error 1, 2, 3, 4, 6, 7, 8, 9 and 10 filed by Gatewood were neither briefed nor argued and are, therefore, deemed abandoned.
[2] At the motion to suppress hearing Detective Gros read the pertinent portion of the form that the defendants signed. It states: "It is a possibility for your participation in other crimes is also under investigation. According to the provisions of the Constitution of the United States and the State of Louisiana, it is my duty to inform you that you need not make any statements, that is, you have a right to remain silent. Anything you say may be used against you in trial. You have a right to consult with and obtain the advice of an attorney before answering any questions. If you cannot afford an attorney, the court will obtain an attorney to represent and advise you. You have a right to have your attorney or an appointed attorney present at the time of any questioning or giving of any statement."
[3] As read by Detective Gros at the motion to suppress hearing this statement is as follows: "I have been duly warned and advised by Det. Gary Gros, the person who identifies himself as a Gretna City Hall (It should have been `police officer') that I do not have to make any statement at all or answer any question or do anything that might tend to go against me or incriminate me in any manner. That any statement I make may be used against me on a trial or trials for the offense or offenses concerned, which the following statement is herein made. I was also warned and advised of my right to the advice and presence of a lawyer of my own choice before, at any time during any questioning or statement I make and if I am not able to hire a lawyer, I may request to have a lawyer appointed for me by the proper authority without cost or charge to me. I do not want to talk to a lawyer and I hereby waive my right to the advice and presence of a lawyer before and during any questioning or at any time before or while I voluntarily make the following statement to the aforesaid person, knowing that anything I say can and will be used against me in a Court of law. I declare the following voluntary statement as made to the aforesaid person of my own free will without promise or hope of reward, without fear or threat of physical harm, without coercion or offer of favor, without leniency or offer of leniency by any person or persons whatsoever."