425 So.2d 1241 (1983)
STATE of Louisiana
v.
Elliot Joseph DAVID.
No. 82-KA-0150.
Supreme Court of Louisiana.
January 10, 1983.
Rehearing Denied March 28, 1983.
*1243 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Morel, Jr., Dist. Atty., Don Almerico, Harry Morgan and Abbott J. Reeves, Asst. Dist. Attys., for plaintiff-appellee.
*1244 G. Walton Caire, Edgard, Richard J. Holmes, LaPlace, for defendant-appellant.
DENNIS, Justice.
On March 31, 1981, the defendant and his wife entered a Paradis, Louisiana lounge. Over a period of about an hour, the defendant consumed some liquor and some beer. However, he did not appear to be intoxicated. After all but one of the customers had left for the evening, the defendant produced a .25 caliber pistol and demanded valuables from the customer, the bartender and a barmaid. When the defendant asked the customer whether he recognized him and received a muffled response, he placed the gun to the customer's head and pulled the trigger. The weapon at first misfired, but the defendant pulled the trigger again, firing a fatal shot into the customer's head from a distance of about two inches. After a brief scuffle with the bartender, the defendant fled with his wife, leaving behind some personal property, including an address book which the police used to track him down. He was arrested at his residence after being forced from the premises by tear gas. On the morning of his arrest, the defendant made oral and written statements in which he confessed to the robbery and the shooting.
The defendant was convicted of first degree murder by a jury which recommended a penalty of death. Defendant appealed filing eleven assignments of error. None of the assignments relating to the guilt phase of the proceedings has reversible merit. During the penalty hearing, however, the trial judge incorrectly instructed the jury as to its duty in deciding whether to recommend the death penalty or a sentence of life imprisonment without parole. Consequently, we will affirm the defendant's conviction, but we are required to grant the defendant a new penalty hearing.

Assignment of Error Number One
By this assignment of error, the defendant asserts that the trial court erred when it ruled that the defendant was able to understand his actions on the date he committed the charged offense. In essence, the defendant argues that there was insufficient evidence to prove his sanity at the time of the instant offense.
A sanity commission of two psychiatrists examined the defendant on April 23, 1981. In their written report, both doctors concluded that the defendant was sane when he committed the offense and that he was able to appreciate the usual, natural, and probable consequences of his acts, and that he was not suffering from any psychological defect or disease. The defendant presented no evidence or testimony regarding his sanity.
The trial court ruled that the defendant was able to distinguish right from wrong and to appreciate the natural consequences of his acts. The trial judge further found that the defendant was able to participate effectively in his defense and to assist his attorneys. Therefore, the court found the defendant able to stand trial.
At the trial, the two members of the sanity commission testified and confirmed their views that the defendant was sane on the date of the instant offense. A third psychiatrist, called by the defense, testified that the defendant understood right from wrong on the date of the murder. The jury rejected the insanity defense and rendered a verdict of guilty.
In Louisiana, an adult defendant is presumed to be sane and responsible for his actions. La.R.S. 15:432. However, a defendant may rebut this presumption by showing, by a preponderance of the evidence, that he was suffering from a mental disease or defect which rendered him incapable of distinguishing right from wrong with reference to the conduct in question. State v. Roy, 395 So.2d 664, 665-66 (La. 1981); C.Cr.P. art. 652; La.R.S. 14:14. See, Note, The Insanity Defense in Louisiana: Presumptions, Burden of Proof and Appellate Review, 42 La.L.Rev. 1166 (1982). A reviewing court will reverse the trial judge's ruling that the defendant is sane only when it finds "under the facts and circumstances of the case, that a rational *1245 fact finder, viewing the evidence in the light most favorable to the prosecution, could not have concluded that the defendant had failed to prove by a preponderance of the evidence that he was insane at the time of the offense." State v. Roy, supra.
In the present case, the defendant presented no evidence of his alleged insanity at the sanity hearing. At trial, his own expert witness testified that the defendant understood right from wrong on the date of the offense. On the other hand, the two examining psychiatrists of the sanity commission reported and testified that the defendant was able to appreciate the consequences of his acts and to distinguish right from wrong at the time of his offense. Both of these doctors also testified that the defendant suffered from no psychological defect or disease.
Given these circumstances, the jury did not err in its rejection of the "not guilty and not guilty by reason of insanity" verdict because the defendant failed to prove his insanity by a preponderance of the evidence. State v. Roy, supra.
Accordingly, this assignment of error lacks merit.

Assignment of Error Number Two
By this assignment of error the defendant contends that the trial court erred when it denied his motion to suppress his confession. He argues that his confession was not free and voluntary because it was made while the defendant was in an abnormal physical and mental state produced by alcohol and Valium tablets, a lack of sleep, and tear gas used by the police to force him from his home. He asserts that his waiver of counsel was invalid because it was induced by the police playing on his concern for his wife's well being and because the waiver was made without an officer ever asking the defendant directly if he wanted a lawyer.
The defendant was arrested at his residence at 2:52 a.m. on March 27, 1981 by members of the St. Charles Parish Sheriff's Office. He was orally advised of his constitutional rights immediately after his arrest. The defendant was then transported to the detective bureau where he was again advised of his rights. Before he gave a formal statement, the defendant was advised of his rights for a third time. Thereafter, the defendant admitted to the robbery and the shooting, and he signed a written version of his oral confession.
During these events the defendant, although smelling of alcohol, did not appear to be intoxicated or impaired in any way. He seemed literate and conversed with the detectives without difficulty. He was given cigarettes and coffee during his questioning and was allowed to make several phone calls, including at least three to his wife.
The general rule is that, on the trial of a motion to suppress, the burden of proof is on the defendant to prove the grounds of his motion. La.C.Cr.P. art. 703(D). One exception to the rule is that the State has the burden of proving beyond a reasonable doubt the voluntariness of a confession which the defendant has moved to suppress as evidence at the trial on the merits. La. C.Cr.P. art. 703(D); La.R.S. 15:451; State v. Napier 385 So.2d 776 (La.1980); State v. Jones, 376 So.2d 125 (La.1979); State v. Volk, 369 So.2d 128 (La.1979); State v. Bouffanie, 364 So.2d 971 (La.1978); State v. Johnson, 363 So.2d 684 (La.1978). State v. Glover 343 So.2d 118 (La.1977). In reviewing the trial judge's ruling as to the admissibility of a confession, his conclusions on credibility are entitled to the respect due those made by one who saw the witnesses and heard them testify. State v. Bouffanie, supra.
Applying these precepts, we conclude that the trial court did not err when it found the confession to have been voluntary. The defendant appeared to have been drinking and claimed to have taken Valium tablets prior to his confession. However, during the period of questioning, the defendant was coherent and he responded to the questioning without impairment. Witnesses to defendant's demeanor and behavior before the shooting said that he appeared *1246 to have been sober and coherent. The confession reads as a series of rational responses to the interrogating officers' questions. Moreover, the interrogation setting appears to have been free of coercion. The defendant was seated without handcuffs at an officer's desk while questioned. His requests for a telephone, cigarettes and coffee were met several times.
The record supports rejection of the defendant's claims that he was not asked if he wanted an attorney and that the police officers played on his concerns for his wife to induce a waiver of his rights. The defendant was advised of his right to have an attorney present by three separate readings of his Miranda warnings. He signed a written waiver of this right prior to giving any statement. The assertion that the defendant feared for his wife's well being is not supported by the evidence. The defendant was allowed to phone his wife at least three times during his questioning. Moreover, the interrogating officers' testimony does not indicate they had any discussion with the defendant about his wife except perhaps in connection with their granting him permission to call her on the telephone.
Under the circumstances, the trial judge did not err in concluding that the defendant knowingly and intelligently waived his constitutional rights and voluntarily confessed to the crime.
Accordingly, this assignment of error lacks merit.

Assignment of Error Number Four
The defendant contends that the trial court erred in failing to order a venue change pursuant to Code of Criminal Procedure article 621 et seq. In rejecting the motion for change of venue, the trial court apparently found that the defendant failed to carry his burden of proving that by reason of prejudice existing in the public mind or because of undue influence, or that for any other reason, a fair and impartial trial could not be obtained in the parish where the prosecution was pending. La.C.Cr.P. art. 622; State v. Bell, 315 So.2d 307 (La. 1975). Although the trial court possesses a broad range of discretion in this area, see e.g., State v. Willie, 410 So.2d 1019 (1982), we are required to make an independent evaluation of the facts to determine whether the accused received a fair trial, unfettered by outside influences. Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966).
The constitutional standard of fairness requires that a defendant have a panel of impartial, "indifferent" jurors. Qualified jurors need not, however, be totally ignorant of the facts and issues involved. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court. At the same time, the juror's assurances that he is equal to this task cannot be dispositive of the accused rights, and it remains open to the defendant to demonstrate the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality. Murphy v. Florida, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975); Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961).
In unusual circumstances, prejudice against the accused may be presumed. Although extensive knowledge in the community of either the crimes or the putative criminal and his prior crimes is not in itself sufficient to render a trial constitutionally unfair, unfairness of a constitutional magnitude will be presumed in the presence of a trial atmosphere which is utterly corrupted by press coverage or which is entirely lacking in the solemnity and sobriety to which a defendant is entitled in a system that subscribes to any notion of fairness and rejects the verdict of the mob. See Murphy v. Florida, supra, Dobbert v. Florida, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977); Rideau v. Louisiana 373 U.S. 723, 83 S.Ct. 1417,10 L.Ed.2d 663 (1966). Estes v. Texas, *1247 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); Sheppard v. Maxwell, supra.
In determining whether the defendant succeeded in showing actual prejudice against him to a degree that rendered a fair trial impossible, we have the benefit of a completed trial record. The record demonstrates that counsel for the defendant conducted a thorough voir dire of the prospective jurors. Of the one hundred and twelve prospective jurors, twenty-seven indicated that they had read or heard about the case. However, only six of the twenty-seven stated any opinion as to the defendant's guilt or innocence. Of these, four testified that they could set aside that opinion and render a verdict based on the evidence presented at trial. The court sustained challenges for cause as to all four who had formed an opinion but who were unable to lay their preconceived opinion aside. In addition, the defendant exercised his privilege of challenging eleven other prospective jurors peremptorily, thus failing to exhaust all of his peremptory challenges. The jury selection procedure resulted in the seating of a jury consisting of three women and nine men. From our independent review of the record, we are convinced that the defendant failed to carry his burden of proving actual prejudice on the part of the jurors.
To bolster his argument in favor of a change of venue, the defense attorney entered into the record several newspaper articles relating to the instant offense and trial. Most of these articles appeared at the time of the commission of the murder, or shortly thereafter. The articles consist primarily of factual accounts of the crime and of the proceedings leading up to the defendant's trial. Although the crime was extensively covered by the area news media, it was not attended by other inflamatory factors such as racial strife, see State v. Bell, supra, murder of a law enforcement official, State v. Felde, 382 So.2d 1384 (La. 1980) or an egregious event such as a televised confession. See Rideau v. Louisiana, supra. On the contrary, the defendant and the victim were of the same race, residents of the same parish and patrons of the same barroom where the homicide occurred. Extensive knowledge in the community of the crime and the alleged criminal's identity is not in itself sufficient to justify a presumption of partiality, and the trial atmosphere in this case was not utterly corrupted by the press coverage. We believe that the qualifications possessed by each selected juror in this case met or exceeded the minimum requirement that "the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." Irvin v. Dowd, supra.
Accordingly, this assignment of error lacks merit.

Assignment of Error Number Five
By this assignment of error, the defendant contends that the trial court erred in not allowing individual voir dire.
Articles 782-88 of the Louisiana Code of Criminal Procedure relate to the examination of potential jurors for service. No provision in our law either prohibits or requires the sequestration of prospective jurors for an individual voir dire. In general, details as to whether the potential jurors should be called singly or by groups are left to the court's discretion. La.C.Cr.P. 784, comment c; art. 786. Unless there is a significant possibility that individual jurors will be ineligible to serve because of exposure to potentially prejudicial material, there is no requirement that the examination of each juror must be conducted individually. Cf. State v. Goodson, 412 So.2d 1077 (La.1982); State v. Lindsey, 404 So.2d 466 (La.1981).
In the present case, the possibility that individual jurors would be ineligible because of their exposure to prejudicial material was remote. Indeed, as we have noted, the publicity given the crime and upcoming trial was not abnormal or sensational. The newspaper stories relating to the murder consisted of factual accounts of the crime. Only one editorial alluded to the crime and the trial, and this article did not mention the defendant by name. Therefore, the trial judge did not abuse his discretion when he refused individual voir dire.
*1248 Accordingly, this assignment of error lacks merit.

Assignment of Error Number Six
By this assignment of error, the defendant complains that the trial court erroneously permitted the introduction of evidence unlawfully obtained from his residence. He contends that photographs used and introduced at trial were products of a warrantless search of his home. He argues that several items of physical evidence were seized pursuant to an invalid consent to search which the police obtained while he was intoxicated.
Several pieces of incriminating evidence, including a money bag and a wallet, were seized in the defendant's home pursuant to a search conducted after the defendant had executed a written consent to search form. The defendant now argues that his intoxicated state at the time of his arrest vitiated his consent.
When a search is made with consent, the state must prove that the consent was freely and voluntarily given, as shown by the facts and circumstances of the individual case. State v. Robinson, 386 So.2d 1374 (La.1980). Under the United States Constitution, the test for the voluntariness of a consent to search is a "totality of the circumstances" test and courts must examine all the surrounding circumstances to determine whether the consent was indeed voluntary. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The fact that a defendant is in a somewhat intoxicated state is a relevant circumstance to consider, but intoxication alone will not render the consent involuntary. State v. Ludwig, 423 So.2d 1073 (1982); State v. Strange, 334 So.2d 182, 184 (La.1976).
As we noted in discussing the voluntariness of the defendant's confession, he had consumed some alcohol and he claimed to have taken several Valium tablets before the commission of the robbery and murder. However, when he was arrested, the defendant appeared to be coherent. He responded directly to questions of police officers. The record suggests that the defendant understood the nature of the consent to search and was aware of the consequences of his actions. The articulate confession given by the defendant on the morning of his arrest further belies his argument that his intoxication was so great that he did not understand the waiver of his rights. Thus, the trial judge did not err when he allowed the introduction of the evidence seized pursuant to the defendant's consent.
The introduction into evidence of the photographs of defendant's house and washing machine was clearly not harmful or prejudicial to the defense. Accordingly, it is not necessary that we determine whether the officers were guilty of an unlawful intrusion by taking these photographs outside the building before obtaining the defendant's signature on the consent to search form.
Accordingly, this assignment of error lacks merit.

THE PENALTY HEARING.
The defendant filed five assignments of error attacking his sentence of death. Two of these assignments require some comment by this court. Because we find merit in one of these assignments, we will pretermit discussion of the other three alleged errors.

A. Jury Instruction
The trial judge gave the following jury instruction at the close of the defendant's sentencing hearing:
* * * * * *
If after giving consideration to all of the facts and the circumstances of the sentencing hearing in this case, and your minds are wavering, unsettled, and unsatisfied, then this is a doubt of which the law speaks and which you must resolve in favor of the defendant and return a sentence of life imprisonment without benefit of parole, probation, or suspension of sentence; but, if that doubt does not exist in your minds as to whether or not the State has established aggravating circumstances or circumstances, then you *1249 are obliged to return a sentencing recommendation of death. (emphasis added).
* * * * * *
Thus, the trial judge instructed the jurors at the penalty hearing that they were obliged to recommend the death penalty if they found that the prosecution had established an aggravating circumstance. The instruction was directly contrary to our law. The sentence of death cannot be imposed unless the jury finds beyond a reasonable doubt that at least one statutory aggravating circumstance exists, but the jury is never obliged to recommend the death penalty and may recommend a sentence of life imprisonment without benefit of probation, parole or suspension of sentence in any case in which it finds the death sentence inappropriate. La.C.Cr.P. art. 905.3; 905.6. See, State v. Watson, 423 So.2d 1130 (La. 1982). This is one of the principal features of our present death penalty scheme which has been expressly approved by the United States Supreme Court, see Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), and is one of the significant differences between our present law and the former mandatory death penalty statute which was declared unconstitutional by the high court in Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976).
Consequently, we are duty bound to declare that the instruction was incorrect both because it is contrary to our law and because a different interpretation might cause the high court to strike down our death penalty statute as unconstitutional. Furthermore, we cannot say that the giving of this particular erroneous instruction to the jury was harmless because there is at least a reasonable possibility that a jury which has been told that it must recommend the death penalty if any aggravating circumstance exists will do just that, instead of determining whether the penalty is appropriate after weighing the aggravating and mitigating circumstances as required by law.

B. Voir Dire
The trial court during voir dire repeatedly asked each panel of prospective jurors whether all of them could impose the death penalty. When a juror responded negatively the court in most cases asked the juror if he could impose the death penalty under any circumstance or if he was philosophically opposed to it. Except for a few occasions, those jurors who voiced an objection to the death penalty were excused by the trial judge before the defense counsel had an opportunity to question them. The defendant contends that this practice deprived him of his right to a full voir dire.
A criminal defendant in Louisiana has a "right to full voir dire examination of prospective jurors." La. Const. art. I, § 17. See also, La.C.Cr.P. art. 786. The accused's right to "full voir dire examination" includes the right to make such inquiries of prospective jurors as will enable him to secure his constitutional rights, not only by showing grounds for challenges for cause, but also by eliciting facts which will empower him intelligently to exercise his right of peremptory challenge, State v. Boen, 362 So.2d 519 (La.1978); State v. Jackson, 358 So.2d 1263 (La.1978); and the right to examine a prospective juror challenged for cause by the prosecution in order to demonstrate his impartiality. State v. Shelton, 377 So.2d 96 (La.1979); See generally, State v. Claiborne, 397 So.2d 486 (La.1981).
When a defense attorney is precluded from voir dire examination of a prospective juror which may have demonstrated the juror's ability to render an impartial verdict, the granting of a state challenge for cause by the trial court deprives an accused of his right to full voir dire examination. State v. Claiborne, supra. Thus, the trial court may avoid reversible error by allowing the defense attorney an opportunity to examine the potential juror in an attempt to "rehabilitate" the potential juror by showing that the juror could reach a fair and impartial verdict. Id.
In a capital case, no potential juror may be excused merely because he voices a *1250 general objection to the death penalty, Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), or because he cannot swear that the possibility of the death penalty would not "affect" his deliberation on any issue of fact, Adams v. Texas, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980). Thus, not every attitude against the death penalty may serve as grounds for excluding a potential juror. Arguably, therefore, as we have reasoned in one previous case, when a juror is challenged for cause because of his answers concerning the death penalty, the trial judge must give the defense counsel an opportunity to traverse that juror for rehabilitation. See State v. Penns, 407 So.2d 678 (La.1981).
Nevertheless, because a reversal of the death sentence is required due to the trial judge's clearly erroneous jury instruction, we set to one side without deciding the issue raised by the questionable voir dire in this case.[1]

SUMMARY
Before we can affirm the imposition of a death penalty in the face of an error in the capital sentence hearing, we must be able to say beyond a reasonable doubt that the error made no difference to the jury in deciding whether to recommend a sentence of death or life imprisonment. The error here was too fundamental for us to conclude that it was harmless. Contrary to law and a basic tenet of our capital sentencing statute, the jury was told it must recommend a death penalty if an aggravating circumstance exists. Our statute provides instead that the jury always has the discretion to reject the death penalty as inappropriate and recommend a life sentence without parole, probation or suspension of sentence. Since there was no doubt an aggravating circumstance existed in this case, the jury having been required to find one in order to convict the defendant of first degree murder, the judge's instruction was tantamount to a directed verdict of a death sentence. Such an instruction is plainly erroneous and at cross purposes with our law which entrusts solely to the jury the function of selecting the appropriate penalty in a capital case. In effect, the judge's instruction erased for this defendant most of the distinction between the constitutionally approved procedure and the mandatory death penalty law which the United States Supreme Court declared unconstitutional in Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976). Accordingly, the jury's recommendation and sentence based on this egregious error must be set aside and the trial court must be ordered to conduct a new penalty hearing before a properly instructed jury.
CONVICTION AFFIRMED; NEW PENALTY HEARING ORDERED.
NOTES
[1] In oral argument, the defense counsel contended that the improperly impaneled, "death qualified," jury was more likely to vote to convict, and therefore the impropriety vitiated not only the death sentence, but also the conviction. However, most of the studies on this subject have been speculative at best and, in fact, "too tentative and fragmentary to establish that jurors not opposed to the death penalty tend to favor the prosecution in the determination of guilt." Witherspoon v. Illinois, 391 U.S. at 517, 88 S.Ct. at 1774. But see, State v. Miles, 339 So.2d 735, 740-41 (La.1976) (Tate, J. concurring) (concluding that such an error may deprive a defendant of a jury drawn from the entire community).

In the present case, the defendant has not offered any evidence, statistics or studies to show that an improperly impaneled, "death qualified," jury is more likely to favor the prosecution. Further, he has made no attempt to establish that the jury finally impaneled did not represent a sample from the entire community. Accordingly, we decline to reverse the defendant's conviction on mere speculation.