490 So.2d 579 (1986)
STATE of Louisiana, Appellee,
v.
Patricia Ann ESTER, Appellant.
No. 15458-KA.
Court of Appeal of Louisiana, Second Circuit.
June 11, 1986.
*580 Jack Wright, Jr., Monroe, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, James Allan Norris, Jr., Dist. Atty., Michael J. Fontenot, Asst. Dist. Atty., Monroe, for appellee.
Before MARVIN, JASPER E. JONES and LINDSAY, JJ.
JASPER E. JONES, Judge.
The defendant, Patricia Ann Ester, was indicted on six counts of incest and six counts of indecent behavior with a juvenile. This indictment was amended to reflect only the latter offenses, violations of LSA-R.S. 14:81.[1] The defendant was convicted by a jury of violating four of these charges and sentenced to consecutively serve four years at hard labor on each count. She has appealed these convictions asserting and briefing seven assignments of error.
We affirm.

FACTS
On December 25, 1981, the defendant's husband was murdered on a rural road in Ouachita Parish. She was later tried and convicted of first degree murder. While investigating this homicide, the police were informed defendant had engaged in sexual intercourse with her 13 year old son, Dennis Scott Book, on several occasions. She here appeals her convictions and sentences on four of these sexual offenses.
*581 The seven assignments of error raise the following issues:[2]
Assignment of Error # 1
Did the trial court commit reversible error in refusing to require the state to try the defendant for first degree murder before trying on the indecent behavior charges?
Assignment of Error # 2
Did the trial court commit reversible error when it refused to grant the defendant a change of venue?
Assignment of Error # 3
Did the trial court commit reversible error when it refused to grant defendant's motion to sequester the jury venire during the voir dire examination?
Assignment of Error # 4
Did the trial court commit reversible error when it permitted Dennis Scott Book to testify from notes on a calendar over the objection of the defendant?
Assignment of Error # 5
Did the trial court commit reversible error when it denied defendant's counsel the right to fully cross-examine Dennis Scott Book about his sexual conduct with James W. Frye?
Assignment of Error # 6
Did the trial court impose an excessive and severe sentence on the defendant which exceeds constitutional limits?
Assignment of Error # 7
Are there any errors patent upon the face of the record?

ASSIGNMENT OF ERROR # 1

Law On District Attorney's Perogatives In Multiple Prosecutions
The district attorney shall have charge of every criminal prosecution by the state in his district. LSA-Const. Art. 5, § 26(B) (1974).[3] He shall determine when and how he will prosecute individuals charged with crimes. LSA-C.Cr.P. art. 61.[4]

Should The First Degree Murder Charge Have Been Tried First?
The defendant filed a pre-trial motion asserting that her constitutional rights would be violated if she was tried and convicted of the instant offenses prior to a trial on the first degree murder charge. The trial court denied the motion and we denied her application for writs of certiorari, prohibition, mandamus and a stay order. The defendant made the same argument in the appeal of her murder conviction and it was rejected.
We find no reason to question our earlier decision and conclude that this assignment of error is without merit. See State v. Ester, 458 So.2d 1357 (La.App. 2d Cir.1984), writ den., 464 So.2d 313 (La.1985).

ASSIGNMENT OF ERROR # 2

Law On Change of Venue
Every person charged with a crime is presumed innocent until proven guilty and is entitled to a fair trial. LSA-Const. Art. 1, § 16.[5] When a fair trial cannot be obtained *582 by reason of prejudice in the public mind, undue influence or any other reason, a change of venue shall be granted. LSA-C.Cr.P. art. 622.[6]
It is the defendant's burden to establish that it is impossible to obtain a fair trial and this requires a showing of more than mere knowledge by the public of facts surrounding the charged offenses. Some relevant factors that may be taken into consideration are: (1) the nature of pre-trial publicity and the particular degree to which it has circulated in the community; (2) the connection of government officials with the release of publicity; (3) the length of time between the dissemination of the publicity and the trial; (4) the severity and notoriety of the offense; (5) the area from which the jury is drawn; (6) other events occurring in the community which either affect or reflect the attitude of the community or individual jurors toward the defendant, and; (7) any other factors likely to affect the candor and veracity of the prospective jurors on voir dire. Other factors relevant to the inquiry include the degree to which the publicity has circulated in areas to which venue could be changed, the care exercised and the ease encountered in the selection of the jury, and the peremptory challenges and challenges for cause exercised by the defendant in the jury selection process. While a trial judge possesses a broad range of discretion in this area, the reviewing court is required to make an independent evaluation of the circumstances to determine whether the defendant can receive a fair trial. State v. Henry, 446 So.2d 1308 (La.App. 2d Cir.1984); State v. Vaccaro, 411 So.2d 415 (La.1982).

Should The Venue Have Been Changed?
The defendant argues that the pre-trial motion for a change of venue should have been granted due to the media coverage given to the first degree murder charge and the inherently sensitive nature of the instant offenses. In essence, she asserts that she was the target of sensationalized and adversarial radio, television and newspaper reports and that she was unfairly prejudiced in the community mind as her name had become a "household" word.
At the hearing on the motion it was established that the News-Star-World-Publishing Corporation operated the only daily newspaper in Ouachita Parish. Mr. Jerry Pittman, managing editor, testified that thirteen news articles appeared in this publication from December 27, 1981June 10, 1982. Of these, only six referred primarily to the defendant with the latest article appearing six months prior to the trial on the instant offenses. All of these newspaper articles were factual accounts of the defendant's indictment and arrest on all of the charges and of the facts surrounding the death of her husband.[7] The newspaper articles were not included in the record but the trial court noted that what references there were to the sexual offenses were, in most instances, not greatly emphasized.
Mr. Ken Booth, news director for television station KNOE located in Ouachita Parish, testified that news reports concerning the defendant were broadcast but could not relate when and how many stories were *583 aired nor what was said about the defendant.
We conclude that this assignment of error is meritless. The failure of the newspaper articles to be included as part of the record, a six month period of time from the latest newspaper account concerning the defendant until trial on the present offenses, the factual nature of the articles themselves and the testimony of both media witnesses compels the conclusion that the defendant has failed to establish that it was impossible to get a fair trial. At most, she has only revealed that the newspaper and television accounts generated mere public knowledge of the facts surrounding the sexual offenses and her indictment and arrest on the murder charge. State v. Vaccaro, supra; State v. David, 425 So.2d 1241 (La.1983).

ASSIGNMENT OF ERROR # 3

Law On Sequestering The Venire During Voir Dire Examination
In the jury selection process, the decision to sequester individual jurors during voir dire is within the discretion of the trial court. LSA-C.Cr.P. arts. 784, 786, 791.[8] Unless there is a significant possibility that individual jurors will be unable to serve because of exposure to potentially prejudicial material, there is no requirement that the examination of each juror be conducted individually. State v. David, supra. There is no provision of law which either prohibits or requires sequestration of prospective jurors for an individual voir dire. It is the defendant's burden to show that the trial court abused its discretion in refusing to sequester the venire during voir dire. State v. Wilson, 467 So.2d 503 (La.1985).

Should The Venire Have Been Sequestered During Voir Dire?
The trial court refused the defendant's pre-trial motion to sequester the venire during voir dire. She argues that the court's ruling created an atmosphere conducive to allowing one juror's remarks to create prejudice in the minds of the venire.
The record fails to reveal the substance of the questioning of the individual jurors by the defendant's counsel. At the hearing on the motion, the defendant argued that the sensitive nature of the sexual offenses, and the pre-trial publicity concerning her involvement in the murder of her husband, would create prejudice in the minds of the members of the venire who knew nothing about any of the offenses.
We conclude that the trial court was within its discretion in denying the motion. As previously discussed in Assignment of Error # 2, the pre-trial newspaper coverage was factual and the record shows no evidence of the type of sensational or abnormal publicity that would require such a voir dire examination. Cf., State v. David, supra. We also note that the latest news coverage of record concerning the defendant occurred six months prior to the instant trial. Such a time period establishes only a remote possibility that individual jurors would be ineligible because of any exposure *584 to adverse pre-trial publicity. Cf., State v. Willie, 410 So.2d 1019 (La.1982), on remand, 436 So.2d 553 (La.1983), cert. den., 465 U.S. 1051, 104 S.Ct. 1327, 79 L.Ed.2d 723 (1984).

ASSIGNMENT OF ERROR # 4

Law On Allowing A Witness To Refresh His Memory By Reference To Memoranda
A witness may be allowed to refresh his present memory by reference to memoranda and it is immaterial when or by whom the memoranda is made provided that, after such inspection, the witness can testify to the fact. LSA-R.S. 15:279.[9]

Was Reference To The Calander Permissible?
The defendant argues that the trial court erred in overruling her objection and permitting the witness to use notes on a calendar as part of his direct testimony rather than as an aid to refresh his memory. She asserts that such conduct does not come within the scope of LSA-R.S. 15:279.
The record reveals that during the direct examination of Dennis Scott Book, the witness was permitted to make references to a calendar in order to specify which dates he had sexual intercourse with his mother. The witness testified the calendar was his and had been given to him by his foster mother three days prior to trial. He also related that there were some notations on the calendar previously made by his little sister and foster mother and that the writings he made were primarily check marks on the days of the relevant months that he had sex with the defendant. The witness further explained that the check marks corresponded to a list of dates he used in testifying before the grand jury. He testified as follows concerning assistance given by the district attorney's office:
Q. And you did ... when did you put these check marks?
A. Since Friday night, I've thought up all the dates you see on each one of the months if I've got a check mark on it, I've thought up them dates.
Q. Okay, did you ... did you also visit with someone from the District Attorney's Office last Friday?
A. Yes sir.
Q. Did you go over those ... those dates at that time?
A. I had a copy of them that I had gave... I testified in front of the Grand Jury.
Q. You had a copy of what, you had made a list of ...
A. The dates.
Q.... a list of the dates?
A. Yes sir, and some of them dates in there ... that was on that paper are not marked, because I didn't remember the things that I had done, and if I couldn't remember what I had done on that night, I wasn't going to check it off. (Tr. 219)
He also admitted making one notation on the date of November 3, 1981, but did not relate the substance of the writing.[10]
Initially we note that the essence of the defendant's argument is that the calendar amounted to a "past recollection recorded," rather than as an aid to refresh the present memory of the witness, and that the court erred in its ruling as the memoranda was not prepared wholly by his own efforts or at the time of the recorded occurrences. A reading of the record shows that this contention is unfounded as the calendar served no purpose other than as a memory aid to assist the witness in his direct testimony. *585 There is no evidence that it contained a narrative of the events transpiring on these dates or that the substance of his direct testimony was a product of anything other than his present memory of these prior sexual contacts with his mother. Cf., State v. Gremillion, 428 So.2d 940 (La.App. 1st Cir.1983). As such, it is immaterial when and by whom the memoranda was created. LSA-R.S. 15:279.[11] We also note the state, in response to the defendant's objection, laid an adequate foundation for the use of the calendar as the record establishes that the witness admitted that his memory was "not as good as some people's" and that he was then thirteen years old testifying to occurrences on specific dates that had taken place approximately a year earlier. Tr. 199, 220. Cf., State v. Hookfin, 476 So.2d 481 (La.App. 1st Cir.1985).
We conclude that this assignment of error has no merit.

ASSIGNMENT OF ERROR # 5

Law On Attacking The General Credibility Of A Victim/Witness By Use Of Prior Sexual History
"When the general credibility is attacked, the inquiry must be limited to general reputation, and cannot go into particular acts, vices or courses of conduct." LSA-C.Cr.P. art. 491. In a prosecution for indecent behavior with a juvenile, the victim's chastity, or lack of it, cannot be delved into on cross-examination when general credibility is attacked. State v. Edmond, 399 So.2d 187 (La.1981).

Should The Defendant Have Been Allowed To Ask The Victim About His Prior Sexual History?
The defendant attempted to cross-examine her son, Dennis Scott Book, concerning his prior sexual conduct with James Frye, his mother's lover during the time of the sexual offenses. The trial court sustained the state's objection. The defendant argues her intent was to call into question the victim's credibility and to allow the jury to weigh such evidence in determining her culpability, intent and state of mind. She concludes such testimony is relevant to the material issue of her guilt as opposed to the guilt of James Frye who was separately charged with the same offense. In support of this argument she cites State v. Ludwig, 423 So.2d 1073 (La. 1983).
The record establishes that the proposed line of cross-examination was intended to show that the victim was led into the sexual acts by James Frye. The defendant is mistaken in relying on the cited case to support her argument. In State v. Ludwig, supra, the Louisiana Supreme Court referred to LSA-R.S. 15:435, 441, 422 in recognizing that relevant evidence is determined by the purpose for which it is offered and that such evidence, except as provided for by law, is admissible.[12] Indecent behavior with a juvenile is a specific intent crime with the following elements: (1) that the defendant is over 17 years of age; (2) that the juvenile is under 17 years of age; (3) that there is an age difference of greater than two years between defendant and juvenile; (4) that the defendant *586 committed a lewd or lascivious act upon the person of the juvenile and; (5) that the act committed by the defendant was with intention of arousing or gratifying the sexual desires of either person. State v. Ruple, 426 So.2d 249 (La.App. 1st Cir.1983). The culpability of James Frye, as being the individual who initiated the offenses, is not a material issue in the instant trial. As such, the prior sexual history between the victim and James Frye is simply not relevant to the defendant's specific intent to commit the sexual offense. Also, as the proposed questioning is an attack upon the victim's general credibility, the law provides that evidence relevant to the victim's veracity is not to include particular acts or courses of conduct. State v. Ludwig, supra; State v. Edmond, supra; LSA-C. Cr.P. art. 491.
We determine that this assignment of error is meritless.

ASSIGNMENT OF ERROR # 6

Law On The Review Of Criminal Sentences
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in LSA-C. Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Nelson, 449 So.2d 161 (La.App. 4th Cir.1984); State v. Hammonds, 434 So.2d 452 (La.App. 2d Cir.1983), writ den., 439 So.2d 1074 (La. 1983). The articulation of the factual basis for a sentence is the goal of article 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with article 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which must be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. McGhee, 469 So.2d 1051 (La. App. 2d Cir.1985).
Second, the reviewing court must then determine whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant. A sentence violates LSA-Const. Art. 1, § 20 (1974) if it is grossly out of proportion to the seriousness of the offense or nothing more than the purposeless and needless infliction of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it is so disproportionate as to shock the sense of justice. State v. Lewis, 430 So.2d 1286 (La.App. 1st Cir.1983), writ den., 435 So.2d 433 (La.1983). The trial judge has wide discretion in the imposition of a sentence within the statutory limits and such a sentence should not be set aside as excessive absent a manifest abuse of discretion. State v. Nelson, supra; State v. Hammonds, supra.
In selecting a proper sentence, a trial judge is not limited to considering only a defendant's prior convictions and may properly review all prior criminal activity. State v. Palmer, 448 So.2d 765 (La.App. 2d Cir.1984), writ den., 452 So.2d 695 (La. 1984). A trial court is not required to render a suspension of sentence or probation on a first felony offense. The judge may consider whatever factors and evidence he deems important to a determination of the best interest of the public and the defendant. State v. McKethan, 459 So.2d 72 (La.App. 2d Cir.1984); State v. Tully, 430 So.2d 124 (La.App. 2d Cir.1983), writ den., 435 So.2d 438 (La.1983).

Is The Sentence Excessive?
The defendant argues that the consecutive sentences, totalling sixteen years, are excessive in light of the fact that this was the defendant's first felony conviction. She argues that because the offenses were part of a continuous transaction her sentences should not have been consecutive *587 and that the excessiveness of her sentences are even more apparent in light of the fact that she had already been sentenced to life imprisonment without the benefit of parole, probation, or suspension of sentence for her conviction of the first degree murder of her husband.
The record reveals the defendant was found guilty on four counts of indecent behavior with a juvenile in violation of LSA-R.S. 14:81.[13] At the sentencing hearing the trial court reviewed the presentence report and noted that the defendant had no prior felony convictions. The court also noted the offenses occurred over a considerable time period, the age of her son when the offenses occurred, the apparent emotional and psychological harm done to the victim and the fact that in three of the counts the offenses were committed in the presence of an individual with whom she was committing adultry. The court specifically relates that the sentence imposed was in no way influenced by her other pending charges. The court concluded by relating that this particular type of sexual offense, and the other factors present, outweighed her lack of a prior felony conviction and that any lesser sentence would depricate the seriousness of the crimes.
We conclude that there is no merit to this assignment of error. Initially we note that the defendant is incorrect in asserting that she had already been sentenced to life imprisonment for the murder of her husband when she was sentenced for the instant conviction. The trial judge specifically mentioned that the defendant had yet to be found guilty of the murder charge. The four year sentence on each count is within the sentencing parameters of LSA-R.S. 14:81.[14] The record shows that the sexual offenses occurred on or about October 29, 1981, November 3, 1981, November 5, 1981, and December 10, 1981. Even if these occurrences can be deemed as part of the same overall scheme they were separate and distinct enough to justify consecutive sentences. Cf., State v. Nelson, 467 So.2d 1159 (La.App. 2d Cir. 1985). In any event, the trial court expressly directed that the sentences be served consecutively and gave ample justification for the ruling. LSA-C.Cr.P. art. 883.[15]
The trial court did not abuse its discretion in imposing consecutive sentences. The incarceration imposed amounts to a total of sixteen years as opposed to a possible fine of $20,000.00 and a potential exposure to twenty years at hard labor. Considering the mitigating and militating factors articulated by the trial court, the defendant's prior criminal activity and social history as described in the presentence report and evidence of the fact that the sexual abuse against the victim began when he was about the age of five, the sentences imposed are not excessive.

ASSIGNMENT OF ERROR # 7

Law On Review For Error Patent On The Record
An appellate court may consider an error discoverable by a mere inspection of the record and without inspection of the evidence. LSA-C.Cr.P. art. 920(2).[16] In a criminal case, the record may be reviewed *588 for discoverable error. The portions of the record which are subject to such a review, even in the absence of duly assigned errors, include the caption, statement of time and place of court, indictment or information and endorsement thereon, arraignment, pleading, empaneling of the jury, verdict, judgment, bill of particulars filed in connection with short form indictment or information and, in capital cases, minute entry indicating that jury has been sequestered. State v. Oliveaux, 312 So.2d 337 (La.1975).

Is There Error Patent On The Record?
There is no merit to this catchall assignment of error as a thorough review fails to reveal any error patent on the record.

CONCLUSION
The convictions and sentences imposed are AFFIRMED.
NOTES
[1] 14:81. Indecent behavior with juveniles

A. Indecent behavior with juveniles is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person. Lack of knowledge of the child's age shall not be a defense.
* * * * * *
C. Whoever commits the crime of indecent behavior with juveniles shall be fined not more than five thousand dollars, or imprisoned with or without hard labor for not more than five years, or both.
[2] The defendant's original counsel filed Assignments # 1-6 in 1983 prior to his election as judge of the Fourth Judicial District Court. Present counsel was appointed and his appeal of the defendant's convictions reiterated Assignments # 2, 3 and 6 and added Assignment # 7.
[3] § 26. District Attorneys

. . . . .
(B) Powers. Except as otherwise provided by this constitution, a district attorney, or his designated assistant, shall have charge of every criminal prosecution by the state in his district, be the representative of the state before the grand jury in his district, and be the legal advisor to the grand jury. He shall perform other duties provided by law.
[4] Art. 61. District attorney; powers and duties

Subject to the supervision of the attorney general, as provided in Article 62, the district attorney has entire charge and control of every criminal prosecution instituted or pending in his district, and determines whom, when, and how he shall prosecute.
[5] 16. Right to a Fair Trial

Section 16. Every person charged with a crime is presumed innocent until proven guilty and is entitled to a speedy, public, and impartial trial in the parish where the offense or an element of the offense occurred, unless venue is changed in accordance with law. No person shall be compelled to give evidence against himself. An accused is entitled to confront and cross-examine the witnesses against him, to compel the attendance of witnesses, to present a defense, and to testify in his own behalf.
[6] Art. 622. Grounds for change of venue

A change of venue shall be granted when the applicant proves that by reason of prejudice existing in the public mind or because of undue influence, or that for any other reason, a fair and impartial trial cannot be obtained in the parish where the prosecution is pending.
In deciding whether to grant a change of venue the court shall consider whether the prejudice, the influence, or the other reasons are such that they will affect the answers of jurors on the voir dire examination or the testimony of witnesses at the trial.
[7] The witnesses' testimony establishes that the majority of the newspaper articles primarily concerned Danny Weeks, a co-defendant in the first degree murder charge. See State v. Ester, supra, for information concerning his participation in the murder of the defendant's husband.
[8] Art. 784. Method of selecting panel

In selecting a panel, names shall be drawn from the petit jury venire indiscriminately and by lot in open court and in a manner to be determined by the court.
In the judicial district courts, including the Criminal District Court for the parish of Orleans, wherein use of a jury pool has been authorized by law, the petit jury panel shall be selected by random, indiscriminate choice in a manner to be determined by the rules of the court in which the jury panel is selected. [emphasis added]
Art. 786. Examination of jurors
The court, the state, and the defendant shall have the right to examine prospective jurors. The scope of the examination shall be within the discretion of the court. A prospective juror, before being examined, shall be sworn to answer truthfully questions asked him relative to his qualifications to serve as a juror in the case. [emphasis added]
Art. 791. Sequestration of jurors and jury
A. A jury is sequestered by being kept together in the charge of an officer of the court so as to be secluded from outside communication, except as permitted by R.S. 18:1307.2.
B. In capital cases, after each juror is sworn he shall be sequestered.
C. In noncapital cases, the jury shall be sequestered after the court's charge and may be sequestered at any time upon order of the court. [emphasis added]
[9] 15:279. Refreshing memory of witness

A witness may be allowed to refresh his memory by reference to his testimony given on the preliminary examination, or at a coroner's investigation, or on a previous trial, or, for the purpose of refreshing his present memory a witness may examine memoranda, and it is immaterial by whom or when the memoranda were made, provided that, after such inspection, the witness can testify to the fact. [emphasis added]
[10] The witness had previously testified that he had sexual intercourse with his mother on November 3, 1981, and that there was an attempt at oral sex. Tr. 209.
[11] See footnote # 9, supra.
[12] § 435. Relevancy

The evidence must be relevant to the material issue.
§ 441. Relevant evidence defined; facts admissible
Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent.
Facts necessary to be known to explain a relevant fact, or which support an inference raised by such fact, are admissible.
§ 442. Determination of relevancy; restricted effect of evidence
The relevancy of evidence must be determined by the purpose for which it is offered; and when evidence has been excluded when offered for one purpose, but admitted when offered for another, its effect must be restricted to the purpose for which admitted, but no one can be heard to establish a fact for one purpose and deny it for another.
[13] See Footnote # 1.
[14] Id.
[15] Art. 883. Concurrent and consecutive sentences

If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently. [emphasis added]
[16] Art. 920. Scope of appellate review

The following matters and no others shall be considered on appeal:
. . . . .
(2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence.