541 So.2d 961 (1989)
STATE of Louisiana, Appellee,
v.
Phillip S. ROBERTS, Appellant.
No. 20381-KA.
Court of Appeal of Louisiana, Second Circuit.
March 29, 1989.
*963 James M. Stephens, Winnsboro, for appellant.
William J. Guste, Jr., Atty. Gen., William R. Coenen, Jr., Dist. Atty., E.R. McIntyre, Jr., Asst. Dist. Atty., for appellee.
Before HALL, NORRIS and LINDSAY, JJ.
NORRIS, Judge.
The defendant, Phillip S. Roberts, age 35, and his wife, Lizabeth Roberts, were indicted on four counts of sexual battery, LSA-R.S. 14:43.1, and 24 counts of molestation of a juvenile, LSA-R.S. 14:81.2. After the defendant's case was severed from his wife's, he proceeded to jury trial. He was found guilty on all four counts of sexual battery and on 16 counts of molestation. The trial court sentenced Roberts to ten years at hard labor on each count of molestation, with the first five to run consecutively, and five years on each count of sexual battery, with one count to run consecutively to the molestation charges. All other counts were to be concurrent with the 55-year sentence. Roberts now appeals, advancing three assignments of error. Finding that they do not present reversible error, we affirm.

Facts
The main witnesses at trial were the victims, defendant's sons Scott (age 14) and James (age 12). They described a household in which nudity and sexual openness were the norm. They also testified to repeated, specific acts of a sexual nature that had been going on for years. The acts focused on at trial occurred in 1986 and 1987, when the family lived in a house on Martin Dr. in Winnsboro until it burned in February 1986 (James said it burned in September 1986), and afterwards in an apartment on Airport St. until defendant's arrest in September 1987. Although the acts usually involved one or both of the boys and their mother, they were always done at the defendant's urging, either openly or subtly expressed.
Scott testified his mother sometimes walked about the house or apartment naked or topless, and sometimes the defendant would ask him to touch her breast or kiss it goodnight. Scott said he "kind of" felt he was expected to comply, and admitted he did comply five to seven times. Sometimes the defendant asked his sons to grab Lizabeth's bare breasts and shake them at him. Scott testified he sometimes saw his parents engaging in sexual intercourse. Sometimes this was when he happened into their bedroom in the morning, but sometimes it was when they were sitting on the livingroom couch, with the naked Lizabeth sitting on the defendant's lap and facing him, and they engaged in the act while Scott and James were in the room watching TV. Sometimes as the family was sitting around watching TV, Lizabeth would turn to the defendant and bare her breasts or unbutton her shorts to show her vagina, and she did so in plain view of Scott and James. The defendant did not ask her to do it, but Scott "knew" he wanted her to. Once at the dinner table, the subject of sex came up and the defendant told Scott to "go through the motions" with Lizabeth. Scott was 13 at the time. They undressed and went through the motions, though no actual contact was made. On another occasion, Lizabeth stroked both boys' penises while she had intercourse with the defendant. Once the defendant gave his sons an "anatomy lesson," pointing out the sexual organs on the undressed Lizabeth and instructing Scott and James to stick their fingers into her vagina.
James's testimony was substantially the same. He estimated he had fondled Lizabeth's breasts, at the defendant's request, ten to 15 times. He testified that when she walked around naked, it was at the defendant's *964 instruction. He added the defendant would make a hissing noise and this was apparently the signal for Lizabeth to turn to him and expose her breasts or vagina. Like Scott, James had been urged to "go through the motions" with Lizabeth and had received a "sex education lesson" in which the defendant instructed him to touch parts of Lizabeth's vagina. James testified that his mother knew such acts were wrong, but she also knew that if she refused to comply, the defendant would beat her.
Both Scott and James testified to various incidents of sexual activities between the defendant and his neighbors. The neighbors testified for the defense and either denied the stories, could not remember or admitted them with the explanation that no children were around when they occurred. The jury acquitted Roberts on all these counts. James also testified that the defendant made him wrestle on the floor with his naked mother in exchange for permission to stay up late to watch wrestling on TV, and made him stick his fingers in her vagina until she cried "uncle" to end the "match"; the jury acquitted Roberts on these counts as well.
Dr. Bobby Stephenson, a licensed psychologist, testified that he had examined Scott and James and found that they showed serious adjustment problems. They had been exposed to physical conflict, emotional abuse and inappropriate sexual activity. He suggested a "long history of intimidation" on the part of the defendant. Although he did not interview the defendant, Dr. Stephenson believed he had trouble getting sexually aroused and his intent much of the time was to achieve more gratification by getting the boys involved. On cross-examination he stated that Scott's rendition of events may have minimized the conduct, and that both boys were probably not sophisticated enough to grasp the defendant's motivations. Dr. Stephenson concluded that the boys would need intensive psychotherapy for the next 15 or 20 years.
Mrs. Crockett, a child protection investigator, interviewed the defendant twice. Without objection, she testified that he mentioned problems in his relationship with Lizabeth in that "old things didn't excite him any more."
As noted, the jury found Roberts guilty on four counts of sexual battery that alleged that Scott and James, once each in 1986 and in 1987, touched their mother's vagina upon the defendant's instruction and consent. The jury also found him guilty on 16 counts of molestation. These counts referred to one act with each child in each year: letting them watch him and Lizabeth in intercourse, letting them view her sexual organs, letting them view her exposed breasts and letting them fondle her breasts. In each case, the conduct was compelled by virtue of the defendant's position of control or supervision over the children. Eight other counts of molestation resulted in acquittal.

Assignment No. 1
By his first assignment Roberts urges the trial court erred in chastising and intimidating him during trial by threatening to remove him from the courtroom if he stared at the witnesses. He adds, without elaboration, that this infringed his constitutional right to confront his accusers and deterred him from taking the stand in his own defense.
At the end of the first day of trial, the court stated outside the jury's presence:
Mr. Roberts, I have cautioned your counsel twice. I am now going to caution you. When the witnesses are on the stand you are not to stare at them in any manner, to be intimidating, nor are you to shake your head either agreeing or disagreeing with the witnesses. There are going to be things said that you either like or don't like. Most particularly you are not to do that when the younger boy takes the stand or I will remove you from the court room. Now I have warned your counsel twice, I am warning you now. This is the last one. All right. R.p.p. 280-281.
Roberts correctly asserts that both the federal and state constitutions guarantee the right of a defendant to confront his *965 accusers. USCA-Const. amend. 6; LSA-Const. art. 1 § 16 (1974). "Confrontation" means a face-to-face meeting between witness and defendant. Kirby v. United States, 174 U.S. 47, 19 S.Ct. 574, 43 L.Ed. 890 (1899); Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); State v. Phillips, 343 So.2d 1047 (La.1977). The right, however, is not absolute. State v. Ranker, 359 So.2d 129 (La.1978). It is subject to the inherent power of courts to conduct criminal proceedings in a dignified, orderly and expeditious manner. LSA-C. Cr.P. art. 17; Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). Louisiana and other states have enacted statutes to permit child victims of sex crimes to testify under conditions that are less confrontational, less traumatic to the child and more conducive to truthful testimony. See LSA-R.S. 15:440.1 through 440.6; State v. In Int. of R.C. Jr., 494 So.2d 1350 (La.App. 2d Cir.1986), and citations therein; but see also Coy v. Iowa, ___ U.S. ___, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988). Any abridgment of the right must be justified by necessity and attended by strong assurances that the evidence admitted will be reliable. State v. Monroe, 345 So.2d 1185 (La.1977), and citations therein.
The record shows that the judge did not prohibit Roberts from facing the witness; rather, he admonished him not to stare at the witness in an intimidating manner and not to nod or shake his head as if to prompt the witness. The record does not support defendant's contention that the judge in effect told him to hang his head in shame and portray to the jury the essence of guilt. Even defense counsel conceded at the time that the court's admonition was well taken with respect to the younger witness, James. R.p. 281. Admittedly, Roberts's conduct was not as extreme as that reported in Illinois v. Allen, supra, or in State v. Washington, 322 So.2d 185 (La. 1975), but the warning was under the circumstances a reasonable exercise of the court's authority. This is especially so in the context of an offense like molestation, in which the defendant is alleged to have exploited his position of authority over his children to compel participation in lewd or lascivious acts. Reasonable caution was warranted to prevent exercise of similar authority to influence the witnesses' trial testimony.
The record fails to support the defendant's claim that the warning deprived him of confrontation and cross-examination. He was never removed from the courtroom or deprived of the right to face the witnesses. Furthermore, his counsel conducted full cross-examination of the witnesses. This normally satisfies the defendant's constitutional rights. Delaware v. Fensterer, 474 U.S. 15, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985); Pennsylvania v. Ritchie, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). Because the warning was given out of the jury's presence, the jury could not have been adversely influenced by the judge's apparent disfavor with the defendant's conduct. In short, there is no showing of prejudice.
We also do not see how the warning dissuaded the defendant from testifying in his own defense. Each defendant has the right to testify in his own behalf. LSA-Const. art. 1 § 16; State v. Johnson, 482 So.2d 146 (La.App. 4th Cir.1986). By taking the stand, however, the accused waives his right against self-incrimination with respect to the testimony he gives. Harrison v. United States, 392 U.S. 219, 88 S.Ct. 2008, 20 L.Ed.2d 1047 (1968); State v. Prieur, 277 So.2d 134 (La.1973). Thus the decision to testify is primarily a matter of trial strategy.
In the instant case the record does not show that the defendant was actually restrained from testifying as in State v. Johnson, supra, and there was no apparent suppression of his rights. As for the claim that the judge's admonition disturbed his trial strategy, if this is what occurred then the defense should have lodged some form of contemporaneous objection stating for the record the basis of his complaint. LSA-C.Cr.P. art. 841. Courts disapprove of a defendant "sitting on an error" in hope of receiving a favorable verdict and then raising the error on appeal in order to get a second chance. State v. Arvie, 505 So.2d *966 44 (La.1987); State v. LeBlanc, 506 So.2d 1197 (La.1987). Finally, Roberts claims the trial judge's "reputation for sternly administering justice" discouraged him from testifying. While this perception of the court's attitude toward crime may influence a defendant's trial strategy, it does not strike us as rising to the level of denying his right to testify.
This assignment does not present reversible error.

Assignment No. 2
By this assignment Roberts urges the state failed to prove an essential element of the offenses, intent to arouse or gratify his sexual desires. The standard of review is whether, viewing the evidence in light most favorable to the prosecution, any rational finder of fact could have found that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); LSA-C.Cr.P. art. 821 E; State v. Byrd, 385 So.2d 248 (La.1980). The statutory rule as to circumstantial evidence is that assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. LSA-R. S. 15:438. This statutory rule is not a purely separate test from the Jackson standard to be applied instead of a sufficiency of evidence test whenever the state relies on circumstantial evidence to prove an element of the crime. State v. Wright, 445 So.2d 1198 (La.1984). Ultimately, the Jackson standard is the objective standard for testing the overall evidence, direct and circumstantial, for reasonable doubt. State v. Wright, supra; State v. Nealy, 450 So.2d 634 (La.1984). The statutory rule provides an evidentiary guideline for the jury when considering circumstantial evidence and facilitates appellate review of whether a rational juror could have found the defendant guilty beyond a reasonable doubt. Exclusion of every reasonable hypothesis of innocence is therefore a component of the more comprehensive reasonable doubt standard, where circumstantial evidence is used to convict. Thus although the circumstantial evidence rule may not establish a stricter standard of review than the more general reasonable juror's reasonable doubt formula, it emphasizes the need for careful observance of the usual standard and provides a helpful methodology for its implementation in cases which hinge on the evaluation of circumstantial evidence. State v. Nealy, supra; State v. Chism, 436 So.2d 464 (La.1983).
We note at the outset that sexual battery, the offense charged in the first four counts, does not include the element of intent to arouse sexual desires. LSA-R.S. 14:43.1. It only proscribes directly or indirectly counseling or procuring the victim, who is under 15 years old and at least three years younger than the offender, to touch the offender's genitals. Scott and James provided direct testimony that was sufficient to prove the elements of the offenses. State v. Johnson, 446 So.2d 1371 (La.App. 1st Cir.1984), writ denied 449 So. 2d 1347 (La.1984); State v. Magee, 517 So.2d 464 (La.App. 1st Cir.1987). By directly or indirectly counseling Lizabeth to commit the crime, Roberts made himself a principal. LSA-R.S. 14:24. The assignment lacks merit as to the first four counts.
The remaining counts charge molestation of a juvenile, LSA-R.S. 14:81.2. The elements of this offense include: (1) the defendant is a person over the age of 17; (2) the victim is a person under the age of 17; (3) there is an age difference of at least two years between the persons; (4) the defendant commits any lewd or lascivious act upon the person or in the presence of the victim; (5) he commits it with the intention of arousing or gratifying the sexual desires of either person; and (6) he commits it either by the use of (a) force, violence, duress, menace, psychological intimidation, or threat of great bodily harm, or (b) influence by virtue of a position of control or supervision over the victim. Roberts obviously contests the sufficiency as to element (5), intent. Though intent is a question of fact, it need not be proven as a fact; it may be inferred from the circumstances of the transaction. State v. Kahey, *967 436 So.2d 475 (La.1983); State v. Chism, supra.
The most telling evidence of intent comes from the descriptions of the acts themselves. The defendant initiated a long series of lewd acts which his wife did not engage in unless the defendant was present and directing them. These facts and circumstances, graphically depicted at trial, show an intent on the defendant's part to arouse his sexual desire. See State v. LeBlanc, 213 La. 404, 34 So.2d 905 (1948); State v. Ruple, 426 So.2d 249 (La. App. 1st Cir.1983).
Moreover, Mrs. Crockett and Dr. Stephenson provided testimony that substantiated the strong inference of intent. Based on her interview with the defendant, Mrs. Crockett testified that "he and his wife * * * had been together so long certain things that used to excite him or her did not excite them anymore." When she asked him about the boys' participation he would not give her any specifics. R.p.p. 338-339. Dr. Stephenson testified that on the basis of his interviews with Scott and James, he concluded the defendant was having considerable difficulty functioning sexually. "It took more and more and more and more stimulation and more and more games in order to reach this." R.p. 266. James testified that his mother would engage in this conduct only when the defendant was around. R.p. 321.
The totality of the evidence is, in our opinion, sufficient to persuade a rational factfinder beyond a reasonable doubt that the defendant performed or ordered these "games" with the intent of arousing or gratifying his sexual desire.
There was, of course, evidence that the defendant's desires were not actually aroused. For example, Scott commented that when he kissed his mother's breast, his father "didn't get really excited about it." R.p. 236. In response to a question, James stated that his father did not enjoy it when Lizabeth walked around naked. R.p. 295. Actual arousal, however, is not necessary; the intent to arouse is sufficient. Cf. State v. Kohl, 524 So.2d 781 (La.App. 3d Cir.1988). The jury was entitled to find an intent to arouse sexual desires even if there was no actual arousal. The evidence was sufficient to prove this element of the offense.
This assignment does not present reversible error.

Assignment No. 3
By his third assignment Roberts claims the trial court failed to consider mitigating factors set forth in the mandatory sentencing guidelines of LSA-C.Cr.P. art. 894.1 and imposed an unconstitutionally excessive sentence.
The test of excessiveness is two-tiered. First the record must show the sentencing judge took cognizance of the mandatory sentencing guidelines of art. 894.1. The judge is not required to list every aggravating or mitigating factor as long as the record shows ample consideration of the guidelines. State v. Smith, 433 So.2d 688 (La.1983). The goal of art. 894.1 is to provide an adequate factual foundation for the sentence, not to produce rigid or mechanical recitation of the factors. Thus even in the absence of full compliance with the article, remand is unnecessary when the record clearly shows an adequate factual basis for the sentence. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements to be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La. 1981); State v. McGhee, 469 So.2d 1051 (La.App. 2d Cir.1985).
After noting the defendant's age, the judge stated he had carefully reviewed the presentence investigation ("PSI") in light of art. 894.1. He stated the crimes were shocking and had ruined the victims' lives. The judge acknowledged Roberts's clean prior record, but noted the evidence of family violence adduced at trial in connection with his arrest. The judge finally stated that custodial treatment was necessary, as Roberts was almost certain to commit *968 other crimes if released; probation was not justified.
Admittedly this is not model compliance with the article. However, the evidence and the PSI clearly illumine the judge's apparent conclusion that apart from the good criminal record, no other mitigating factors applied. For instance, there is no suggestion that the victims induced the conduct or could be repaired by compensation. There is no danger of imposing undue hardship on Roberts's dependents, as the victims have been taken into state custody. The judge was also in a superior position, after viewing the defendant's conduct throughout the trial, to assess his character and attitude toward the crimes. Under the circumstances, the record clearly illumines the judge's action on the sentencing guidelines.
The second tier is constitutional excessiveness. A sentence violates LSA-Const. art. 1 § 20 (1974) if it is grossly out of proportion to the seriousness of the offense or is nothing more than a needless and purposeless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, the sentence shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985). The sentencing judge has wide discretion in imposing a sentence within the statutory limits and such a sentence should not be set aside absent a manifest abuse of discretion. State v. Square, 433 So.2d 104 (La.1983).
We concede that the stiff sentence imposed gave us some pause at the outset. It is considerably more than those affirmed in other reported cases. On closer examination, however, the sentence does not appear so shocking. In the first place, the legislature has attached to molestation of a juvenile over whom the offender has control or supervision, a heavier penalty than to any form of carnal knowledge, LSA-R.S. 14:80, or indecent behavior with the juvenile, LSA-R.S. 14:81. This indicates a legislative decision that violation of the sacred trust of parenthood, custody or control may be more offensive than conduct committed with a youthful stranger. The instant case might well show the validity of the legislative judgment; Dr. Stephenson and the social worker who was interviewed in the PSI stated that victims of this form of abuse suffered, as a rule, the most serious problems and that these particular victims would require intense, long-term counseling. This court has already recognized that abuse may beget abuse. State v. Davis, 514 So.2d 757 (La.App. 2d Cir.1987). Given the extent of the damage inflicted, a heavy sentence was merited.
Furthermore, our research has uncovered no case in which so many individual criminal acts were proved. The closest comparable case is this court's opinion in State v. Davis, supra. That defendant was indicted for 31 crimes, including four counts of aggravated rape, 20 of incest, and one apiece of aggravated crime against nature, aggravated oral sexual battery and attempted molestation. The defendant's daughter asserted that he had engaged in incestuous conduct with her for about 30 years. He was allowed to plead guilty to one count of sexual battery and one of molestation, on which he drew the maximum sentences of ten and 15 years respectively. The sentences were ordered to run consecutively. Citing the history of the defendant's behavior, this court affirmed the sentence. The instant case presents a history that is equally shocking and offensive.
Being found guilty on four counts of sexual battery and 16 of molestation, Roberts faced a maximum sentence of 280 years at hard labor plus a fine of $160,000. The total sentence imposed, though admittedly severe, is considerably less than the maximum and includes no fine. Moreover, each individual sentence is less than the maximum, under circumstances where maximum sentences may have been justified. See State v. Davis, supra.
Considering all the facts, we are unable to say the sentence is an abuse of the sentencing judge's wide discretion. The defendant's conduct was especially reprehensible because of its frequency and duration, *969 and it has marred the victim's lives. The sentence is very severe but it answers a course of criminal conduct that is odious, highly repugnant and violative of society's basic values. See State v. Piazza, 496 So.2d 1229 (La.App. 5th Cir.1986). This assignment does not present reversible error.

Conclusion
For the reasons expressed, the defendant's convictions and sentences are affirmed.
AFFIRMED.