615 So.2d 1359 (1993)
STATE of Louisiana, Appellee,
v.
Oscar J. STAMPER, Appellant.
No. 24658-KA.
Court of Appeal of Louisiana, Second Circuit.
March 31, 1993.
*1361 Betty Lee Marak, Asst. Indigent Defender, Shreveport, for appellant.
Paul Carmouche, Dist. Atty., Ronald R. Inderbitzen, Asst. Dist. Atty., Shreveport, for appellee.
Before VICTORY, BROWN and WILLIAMS, JJ.
BROWN, Judge.
A unanimous jury convicted defendant, Oscar Stamper, of three counts of indecent behavior with three male juveniles (LSA-R.S. 14:81). Defendant appeals his convictions and consecutive four, five and six-year hard labor sentences, arguing that the evidence was insufficient to support the verdicts and that the trial court committed various errors during sentencing. For the following reasons, defendant's convictions and sentences are affirmed.

SUFFICIENCY OF EVIDENCE
Two of defendant's assignments of error assert that the evidence was insufficient to support the jury's verdict. These alleged errors directly challenge the quality of the jury's judgment. In our review we are acutely aware that a jury can better assess the evidence than a reviewing court because of its unique and advantageous position of seeing and hearing witnesses. The inherent power of a reviewing court to set aside a jury's verdict focuses on the desire to ensure against unjust convictions. Although the process by which a verdict is evaluated defies precise definition, principles to be applied by a reviewing court were enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This federal constitutional standard requires the reviewing court to determine if the evidence, seen in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt. State v. Romero, 574 So.2d 330 (La.1990); State v. Mussall, 523 So.2d 1305 (La.1988); State v. Jefferson, 606 So.2d 869 (La.App. 2d Cir.1992); State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.1992); State v. Scott, 588 So.2d 1365 (La.App. 2d Cir.1991).
This court must not substitute its opinion of the facts for that of the jury. It is the province of the jury to resolve conflicting inferences from the evidence. Thus, in our review, we must consider all the evidence in the light most advantageous to maintaining the verdict. This is *1362 true because a reversal of a jury's verdict due to insufficient evidence results in the acquittal of the accused. To reverse on insufficiency, we must find that no valid line of reasoning or permissible inferences from the evidence supports the verdict. We have further held that, in the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a finding of guilt. State v. Braswell, 605 So.2d 702 (La.App. 2d Cir.1992); State v. Emerick, 499 So.2d 195 (La.App. 2d Cir.1986).
In order to convict a defendant of indecent behavior with a juvenile, the State must prove that the defendant: (1) committed a lewd or lascivious act upon the person or in the presence of any child under the age of seventeen; (2) was over the age of seventeen and was more than two years older than the victim; and (3) had the specific intent to arouse or gratify either the child's sexual desires or his own. LSA-R.S. 14:81; State v. Edwards, 283 So.2d 231 (La.1973); State v. Rollins, 581 So.2d 379 (La.App. 4th Cir.1991).
Defendant contends that the evidence failed to show beyond a reasonable doubt an intent to arouse or gratify anyone's sexual desires. Defendant also disputes that his touching the buttocks of one child qualifies as a lewd and lascivious act.
Defendant was forty-one years old. The victims were sixteen, fifteen and fourteen years old. The victims attended a group known as Al-a-teen, a program for friends and relatives of alcoholics. Defendant was the adult sponsor of the boys group which included all three victims. Each boy testified that on separate occasions during the spring of 1991 defendant invited him to spend the night. Defendant lived in a small, one-bedroom apartment with only a single bed.
The sixteen-year-old (B.L.) testified that during the middle of April 1991, defendant took him and a friend to defendant's apartment. They watched TV, went out to play pool and then returned to the apartment. Eventually, defendant and B.L., who was wearing boxer shorts, went to sleep in the same bed. B.L. woke up with defendant's hand wrapped around his penis which was outside his shorts and erect. Defendant was lying behind B.L., facing his back. B.L. testified that defendant's hand was moving, "trying to ejaculate me." B.L. knew defendant was awake because he saw his eyes wide open. B.L. told defendant he "didn't appreciate it," got up and went to another room for the rest of the night.
The mother of the fourteen-year-old (C.A.) testified that her son had become withdrawn. After declining to talk with his mother about the change in his attitude, C.A. wrote a letter to defendant. The mother gave defendant this letter. According to C.A., the letter demanded defendant tell what had happened.
In the presence of several other adults, C.A.'s mother met with defendant. Defendant admitted that he and C.A. had slept in the same bed. One of the adults told defendant he had a serious problem. Defendant said, "I do know that I have a problem... It is hard for me to think of myself as a pedophile."
C.A. testified that he spent the night at defendant's apartment in April or May of 1991 [the actual date was May 30, 1991]. They socialized, watched TV, went to an Al-a-teen meeting and returned to defendant's apartment. Defendant, C.A., and the fifteen-year-old victim, D.J., all slept in the same bed. C.A. was on one side of the bed, D.J. was in the middle and defendant was on the other side. At some point during the night, when defendant got up to go to the bathroom, D.J. said that defendant had touched his buttocks.
D.J. testified that the incident related by C.A. occurred on the next to last day of school. Defendant had invited D.J. and C.A. over to his house to celebrate. They socialized, played pool, attended a program meeting and went to defendant's apartment. While D.J. was taking a shower, defendant walked into the bathroom, pulled open the shower curtain and watched D.J. while telling him to "go ahead and wash your hair, don't worry about me." After looking at D.J. for approximately forty-five seconds, defendant left.
*1363 Later that evening, everyone went to bed. C.A. slept by the wall, D.J. slept in the middle of the bed and defendant slept on D.J.'s other side. D.J. felt uncomfortable because the bed was small and they were very close together. D.J. woke up sometime later when he felt a hand on his buttocks. The hand remained there and every once in a while it would move in a circular motion, stop, then repeat the circular motion. This occurred several times over a period of five to seven minutes. D.J. told the defendant to quit and he did.
C.A. testified that he returned to defendant's apartment on June 5, 1991, at defendant's invitation to spend the night. C.A. and defendant walked to the riverfront, talked, went back to the apartment for dinner and went to bed about 11:00 p.m. C.A. and defendant slept in the same bed. C.A. was wearing a pair of shorts with a drawstring and underwear. C.A. awoke to find defendant's hand inside the underwear. Defendant was rubbing his hand on C.A.'s penis. Defendant was told to stop. C.A. became depressed after this incident and corroborated his mother's account of his letter to defendant.
Patty Dunlop, an LPN and the coordinator of the Al-a-teen program, corroborated the mother's statements of her confrontation with defendant and defendant's admissions. Mrs. Dunlop further testified that she immediately discharged defendant from the program.
After receiving complaints from the victims, Detective Best first interviewed defendant on September 20, 1991. In that interview defendant denied the allegations. Five days later Detective Best arrested defendant and while enroute to the police station defendant said that he knew what he had done was wrong. Thereafter, at the station, defendant again denied the allegations.
In the instant case, the uncontroverted evidence shows that defendant was forty-one years old and that each of the boys was under seventeen when the offenses were committed. Defendant attempted to masturbate B.L., fondled C.A.'s penis and rubbed D.J.'s buttocks for a protracted period of time. To be guilty of indecent behavior with a juvenile, the state does not have to prove actual arousal but only an intent to arouse the sexual desires of either victim or perpetrator. State v. Rollins, supra; State v. Roberts, 541 So.2d 961 (La.App. 2d Cir.1989). Intent is a question of fact which must be inferred from the circumstances of the incident. Defendant's statement to the arresting officer that he knew he had done wrong, his admission to the adult group that he had a problem and that it was hard to consider himself a pedophile and, in particular, the descriptions of the acts themselves by the three boys clearly show defendant's intent to arouse and gratify his sexual desires. Defendant neither testified nor presented any contradictory evidence. Thus, the jury was justified in concluding that the necessary intent was proven beyond a reasonable doubt.
Defendant also argues that rubbing D.J.'s buttocks was not a lewd and lascivious act. A lewd and lascivious act is one tending to excite lust in a sexually immoral context. State v. Holstead, 354 So.2d 493 (La.1977). The word "lewd" is identified with obscenity and community norms for morality. Whether an act is lewd and lascivious depends upon the time, the place and all the circumstances surrounding its commission, including the intention, actual or implied, of the actor. In State v. Rollins, supra, defendant's kissing on the mouth and method of hugging members of his scout troop was found to be lewd and lascivious. See also State v. Jacob, 461 So.2d 633 (La.App. 1st Cir.1984).
Based on all the immediate circumstances, including the intrusion of defendant on D.J.'s shower, the protracted time of the touching and the discomforting feeling of the victim, the evidence was sufficient for the jury to have concluded that the rubbing of the victim's buttocks was a lewd and lascivious act as opposed to an unintended or accidental touching.
The evidence is more than sufficient to prove the elements of each offense of indecent behavior with a juvenile beyond a reasonable *1364 doubt. These assignments of error lack merit.

SENTENCING
The court sentenced defendant to serve four years on count one (C.A.), five years on count two (D.J.) and six years on count three (B.L.), with the sentences to run consecutively. Defendant claims that the sentences, totaling fifteen years, are excessive and that the court failed to state adequate reasons to justify an upward departure from the sentencing guidelines and the imposition of consecutive sentences.
Before imposing sentence, the trial court reviewed a Pre-Sentence Investigation report. Neither the defendant nor his defense counsel, when given an opportunity, requested any additions or corrections to this report. In considering the sentencing guidelines the trial court noted that defendant fell within grid cell 5F. That cell provides for intermediate sanctions that do not include incarceration at hard labor. The court, however, stated that defendant's sentences would not be probated because of the aggravating circumstances which were present.
The purpose of the Felony Sentencing Guidelines (FSG) is to recommend a uniform sanctioning system. La.S.G. § 101A. The guidelines are advisory to the sentencing judge. No sentence shall be declared unlawful, inadequate or excessive solely because it is not in conformity with the guidelines. La.S.G. § 103J; LSA-C.Cr.P. Art. 894.1. The recommended sentences of the guidelines are just that, recommendations, and are based on the typical case in which aggravating and mitigating circumstances are not present. La.S.G. §§ 103D; 209A(1). The law requires only that a sentencing court consider the guidelines in deciding on an appropriate penalty; however, it may choose to depart from the designated sentencing grid range. If it does, it must justify its decision. La.S.G. § 209A(3); State v. Perow, 607 So.2d 888 (La.App. 2d Cir.1992).
In setting forth its reasons for the sentences imposed, the court found the victims were particularly vulnerable because the male figures in their households had alcohol problems. Because of this sensitivity the victims were in the Al-a-teen program and had placed their trust in the defendant. La.S.G. § 209B(2) lists as an aggravating circumstance the fact that the defendant knew or should have known the victim was particularly vulnerable due to extreme youth, disability or ill health. While these victims were not "extremely" young, their youth and emotional difficulties coupled with defendant's unique position as their adult leader rendered them particularly susceptible to his depredations.
The trial court commented that defendant's position enabled him to gain influence over the young men. We note that La.S.G. § 209B(4) provides as an aggravating circumstance that the offender used his position or status to facilitate the commission of the offense. This defendant would not have been able to lure these boys into his bed except for his position as their Al-a-teen counselor.
The court further found from observing the victims during their testimony that they had suffered significant permanent injury to their emotional well-being. Significant permanent injury is an aggravating factor under La.S.G. § 209B(9). We note, however, that the record does not support this finding. The only indication of significant and long-term injury is found in the expression of fears by the mothers of the three boys.
The trial court also found that defendant had engaged in conduct which was not considered in his criminal history. La.S.G. § 209B(12). Specifically, the court found that defendant had also fondled another youth who was residing with defendant during this same time period in a similar manner. According to the PSI, this occurred once and the youth thereafter slept in the den. Although the state had declined to prosecute, the court considered an arrest of defendant for molesting a sixteen-year-old male who had resided with defendant for several months in 1987. The PSI contained the information but the details of the incident came from police reports furnished *1365 by the state in answer to discovery. Oral copulations were alleged to have occurred in this 1987 case. The police reports also related defendant's denial of the accusation.
Defendant contends that the court should not have considered these two incidents because no charges were pressed and he did not have the opportunity to show them to be untrue. In selecting a proper sentence, a trial judge is not limited to considering only a defendant's prior convictions; he may review all prior criminal activity. State v. Washington, 414 So.2d 313 (La.1982); State v. Palmer, 448 So.2d 765 (La.App. 2d Cir.1984), writ denied, 452 So.2d 695 (La.1984). A defendant may timely request to review a PSI report and challenge the information contained therein prior to sentencing. State v. Bryant, 514 So.2d 716 (La.App. 2d Cir.1987), writ dismissed, 521 So.2d 1180 (La.1988); State v. Helsley, 457 So.2d 707 (La.App. 2d Cir. 1984). In this case defendant and his counsel declined or waived the opportunity to correct the PSI report or request a sentencing hearing. La.S.G. § 209B(12) provides as an aggravating circumstance that "the offender was persistently involved in similar offenses not already considered as criminal history or as part of a multiple offender adjudication."
The court further commented that twice during the trial it had to admonish defendant to stop intimidating the witnesses during their testimony. This intimidation consisted of defendant "making faces and talking under his breath" while the victims were testifying. Although it is questionable whether this conduct amounts to intimidation, it does demonstrate defendant's attitude and lack of remorse. This would come within the broad category of "any other relevant aggravating circumstances which distinguish the case from the typical case" set forth in La.S.G. § 209B(19).
The court's articulation of its reasons for the sentences is adequate under LSA-C.Cr.P. Art. 894.1(C) and is, with the exception noted, supported by the record.
Defendant claims that the sentences should have been concurrent rather than consecutive. The guidelines suggest that concurrent sentences "should" be imposed if two or more criminal acts constitute parts of a common scheme. La.S.G. § 215A(2); LSA-C.Cr.P. Art. 883. The word "should" is not mandatory. The guidelines suggest that a trial court consider the presence of specific aggravating factors in the determination of whether to impose consecutive sentences. State v. Strother, 606 So.2d 891 (La.App. 2d Cir. 1992).
On the subject of consecutive terms, the guidelines effectively follow the existing sentencing jurisprudence. State v. Strother, supra. While a judgment directing that sentences be served consecutively requires particular justification from the evidence of record, State v. Thompson, 543 So.2d 1077 (La.App. 2d Cir.1989), writ denied, 551 So.2d 1335 (La.1989), concurrent sentences for multiple offenses arising out of a single course of conduct are not mandatory. State v. Nelson, 467 So.2d 1159 (La.App. 2d Cir.1985). Consecutive sentences in multiple crimes arising from a single course of conduct are not necessarily excessive. State v. Ortego, 382 So.2d 921 (La.1980), cert. denied, 449 U.S. 848, 101 S.Ct. 135, 66 L.Ed.2d 58 (1980); State v. Mills, 505 So.2d 933 (La.App. 2d Cir.1987), writ denied, 508 So.2d 65 (La.1987).
Although the trial court found that defendant's acts constituted a pattern of behavior, they were sufficiently separate and distinct so as not to arise out of a single course of conduct. State v. Ester, 490 So.2d 579 (La.App. 2d Cir.1986). The court remarked that the defendant was a person who preyed on young boys and took advantage of his position of trust. Based on the aggravating factors which were supported by evidence of record, it does not appear that the court erred in directing that the sentences be served consecutively or that it failed to articulate adequately its justification for so directing.
Finally, defendant contends that the sentences are excessive. The statute provides that whoever commits the offense *1366 of indecent behavior with a juvenile shall be fined not more than $5,000 or imprisoned with or without hard labor for not more than seven years, or both. Thus, defendant faced fines of $15,000 and up to 21 years in prison. No fine was imposed.
A maximum prison sentence for indecent behavior with a juvenile to run consecutive with a 1 and ½ year sentence for attempted indecent behavior was approved in State v. Tomlin, 478 So.2d 622 (La.App. 2d Cir. 1985). There, the 51-year-old defendant engaged in masturbation with two 12-year-old boys.
In State v. Ester, supra, a mother was convicted of engaging in incest with her son from the time he was five until he was thirteen years old. She received four consecutive four year sentences. We affirmed, noting that even if the offenses were deemed part of an overall scheme, they were sufficiently separate and distinct to justify consecutive sentences. This court also found the sentences were not excessive, noting the victim's age, the apparent emotional and psychological harm, that three of the acts were performed in the presence of a third party with whom the defendant was committing adultery and that the possible sentencing exposure was a fine of $20,000 and twenty years at hard labor.
In the present case defendant could have received a fine of $15,000 and 21 years in prison. Defendant took advantage of his superior position working with emotionally exposed youths, showed no remorse and had a history suggestive of greater liberties. The sentences imposed do not appear grossly disproportional to the crime in light of the harm and do not shock our sense of justice. Defendant has not demonstrated a manifest abuse of discretion by the trial court. State v. Square, 433 So.2d 104 (La. 1983); State v. Madison, 535 So.2d 1024 (La.App. 2d Cir.1988). Accordingly, defendant's sentences are affirmed.

DENIAL OF DEFENDANT'S POST-TRIAL MOTIONS
Defendant's seventh and eighth assignments of error aver that the trial judge erred in denying his motions for post judgment verdict of acquittal, new trial and reconsideration of his sentence. These assignments were not briefed and are thus considered as abandoned. State v. Schwartz, 354 So.2d 1332 (La.1978); State v. Kotwitz, 549 So.2d 351 (La.App. 2d Cir. 1989); URCA Rule 2-12.4.

ERROR PATENT REVIEW
Defendant's final assignment was a request for this court to review the record for errors patent. This request is unnecessary since such a review is made automatically in all criminal cases. LSA-C.Cr.P. Art. 920.
The trial court attempted to give notice of the three year prescriptive period for filing an application for post-conviction relief, but erroneously said that the period was two years. Thus, the trial court is ordered to advise defendant of the three year limitation in writing within ten days of the rendition of this opinion and to file written proof that defendant actually received this notice in the record. No other error patent was noted.

DECREE
For the foregoing reasons, defendant's convictions and sentences are AFFIRMED.
VICTORY, J., concurs with reasons.
WILLIAMS, J., concurs for the reasons assigned by J. VICTORY.
VICTORY, Judge, concurring.
I agree with all parts of the opinion as written except as stated herein. In my view, the trial court should not have considered as an aggravating factor the defendant's prior arrest for allegedly molesting the 16-year-old male in 1987. Although § 209B(12) of the guidelines lists as an aggravating factor that "the offender was persistently involved in similar offenses not already considered as criminal history or as part of a multiple offender adjudication," this court has held that the record must reflect the defendant's actual guilt of the prior offense by at least a *1367 preponderance of the evidence. State of Louisiana v. Larry Shields, 614 So.2d 1279, (La.App. 2d Cir.1993). See also, C. Joseph, B. Boudreaux, C. Lindsay & M. Menezes, Louisiana Sentencing Guidelines Manual, pp. 29-30 & fn. 184 (1993 ed.), citing McMillan v. Pennsylvania, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986); United States v. Lee, 818 F.2d 1052 (2d. Cir.), cert. denied 484 U.S. 956, 108 S.Ct. 350, 98 L.Ed.2d 376 (1987); United States v. Blanco, 888 F.2d 907 (1st Cir.1989). In my view, the record fails to show the defendant's actual guilt of the prior offense by a preponderance of the evidence. Further, one prior offense does not meet the guidelines' requirement of "persistently involved in similar offenses." [Emphasis added.]
Nonetheless, there are several other valid aggravating circumstances in this case as pointed out in the majority opinion, and I agree that the convictions and sentences should be affirmed.